# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION** _____ **IN RE: BEARINGS CASES** _____ **THIS RELATES TO:** **DIRECT PURCHASER ACTION** | Master File No. 12-md-02311 Honorable Marianne O. Battani Child Case: 12-cv-00501-MOB-MKM **Oral Argument Requested** |

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE DIRECT PURCHASER
## PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 2

I.   DPPS' ALLEGATIONS ARE INSUFFICIENTLY PLEADED UNDER
     *TWOMBLY*, *IQBAL* AND THIS COURT'S DECISIONS IN *WIRE HARNESSES* ............... 2

     A.   DPPs' Allegations Are Far Removed From Those Found To Be Sufficient In
          *Wire Harnesses* ................................................................................. 3

     B.   The Foreign Investigations And United States Plea Agreements Do Not
          Plausibly Support The Conspiracy DPPs Have Chosen To Allege ............................. 4

     C.   DPPs' Remaining Factual Allegations Also Do Not Plausibly Support The
          Conspiracy Plaintiffs Describe ................................................................. 7

II.  PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE CONSTITUTIONAL
     OR ANTITRUST STANDING ............................................................................. 8

     A.   DPPs' Conclusory Allegations Are Grossly Insufficient To Establish
          Standing ......................................................................................... 8

     B.   DPPs Fail To Distinguish Squarely-Applicable Case Law ...................................... 11

III. DPPS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ...................... 12

     A.   The Discovery Rule Does Not Apply .............................................................. 12

     B.   DPPs Do Not Adequately Plead Fraudulent Concealment .................................... 14

IV.  DPPS HAVE NOT ADEQUATELY PLEADED A CONTINUING CONSPIRACY
     TO SUPPORT THEIR REQUEST FOR INJUNCTIVE RELIEF ....................................... 17

CONCLUSION ................................................................................................... 18


# TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................1, 2, 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................1, 2, 4, 6

*Cada v. Baxter Healthcare Corp.*,
  920 F.2d 446 (7th Cir. 1990) .............................................................12, 14

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) .........................................................13, 15, 16

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983)..................................................................................17

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
  523 F.2d 389 (6th Cir. 1975) .................................................................16

*Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*,
  491 F.3d 310 (6th Cir. 2007) .................................................................13

*In re Automotive Parts Antitrust Litig. (Wire Harnesses I)*,
  No. 2:12-cv-00101, 2013 WL 2456584 (E.D. Mich. June 6, 2013) .............................. *passim*

*In re Copper Antitrust Litig.*,
  436 F.3d 782 (7th Cir. 2006) .................................................................13

*In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig. (DIPF)*,
  No. 12-711, 2013 WL 812143 (D.N.J. Mar. 5, 2013) .....................................11, 12

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)......................................................................5

*In re Fla. Cement & Concrete Antitrust Litig. (Florida Concrete)*,
  746 F. Supp. 2d 1291 (S.D. Fla. 2010) ...................................................6

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  768 F. Supp. 2d 961 (N.D. Iowa 2011).................................................6, 7

*In re Packaged Ice Antitrust Litig.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011)................................................13

*In re Refrigerant Compressors Antitrust Litig. (Refrigerant Compressors I)*,
  795 F. Supp. 2d 647 (E.D. Mich. 2011)........................................11, 12, 17

*In re Refrigerant Compressors Antitrust Litig.* (*Compressors II*),
No. 2:09–md–02042, 2012 WL 2114997 (E.D. Mich. June 11, 2012) ..................................6

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ..................................................................13

*In re Uranium Antitrust Litig.*,
617 F.2d 1248 (7th Cir. 1980) ..................................................................10

*Klehr v. AO Smith Corp.*,
521 U.S. 179 (1997)....................................................................12, 13, 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).............................................................................8

*Nat'l ATM Council, Inc. v. Visa Inc.*,
922 F. Supp. 2d 73 (D.D.C. 2013) .............................................................9

*NicSand, Inc. v. 3M Co.*,
507 F.3d 442 (6th Cir. 2007) ..................................................................9

*Paper Systems Inc. v. Nippon Paper Indus. Co.*,
281 F.3d 629 (7th Cir. 2002) ..................................................................10

*Pinney Dock & Transp. Co. v. Penn. Central Corp.*,
838 F.2d 1445 (6th Cir. 1988) ................................................................14

*Rotella v. Wood*,
528 U.S. 549 (2000)........................................................................13, 14

*Ruth v. Unifund CCR Partners*,
604 F.3d 908 (6th Cir. 2010) ..................................................................16

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
697 F.3d 387 (6th Cir. 2012) ..................................................................9

*Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*,
738 F. Supp. 2d 505 (D. Del. 2010)...........................................................5

*Universal Bearing Co. v. Baker Bearing Co.*,
No. 10–11142, 2013 WL 1211463 (E.D. Mich. Mar. 25, 2013) ...........................15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971)........................................................................13, 14

## U.S. CONSTITUTION

U.S. Const. art. III...............................................................................9

**STATUTES**

Clayton Act ...........................................................................................................12, 13

RICO (Racketeer Influenced and Corrupt Organizations Act)......................................13

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................2

## <u>INTRODUCTION</u>

The allegations made by Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs") of a vast, two-industry conspiracy involving *all* Defendants, regarding *all* sales of automotive and industrial bearings, to *all* customers in the United States from 2004 onward, are deficient in a number of critical respects, none of which are remedied by DPPs' opposition.

*First*, DPPs have not met the pleading standard under *Twombly*, *Iqbal*, or *Wire Harnesses* to pursue the two-industry conspiracy described in their Complaint. Plaintiffs' principal answer is to rely on (i) the United States plea agreements of just two Defendants; and (ii) government investigations in foreign jurisdictions. Unlike in *Wire Harnesses*, however, the plea agreements set forth a very different conspiracy than that described in the Complaint (and relate, for example, just to automotive bearings that two Defendants sold to certain customers), while the foreign investigations involve foreign markets and have nothing to do with alleged sales to putative members of the DPP class in the United States. Without some *facts* alleged in the Complaint to support the notion that Plaintiffs' conceived conspiracy affecting the United States actually is plausible, the claims that DPPs have chosen to pursue must be dismissed.

*Second*, and independently, DPPs still have not come forward with any facts to show that they purchased bearings from one or more Defendants or what types of bearings they purchased or when, let alone any facts regarding even the general process for buying and selling bearings. This, too, is unlike *Wire Harnesses* and requires dismissal of the Complaint for lack of both antitrust and constitutional standing.

*Third*, DPPs' reliance in their opposition on the discovery rule to save their time-barred claims is wrong and, regardless, their bald and conclusory assertions regarding fraudulent concealment have not been pleaded with the particularity that they admit this Court requires.

1

*Finally*, DPPs have failed to adequately plead a continuing conspiracy beyond 2011 or a credible threat of future harm to support their claim for injunctive relief. Accordingly, all of DPPs' claims against Defendants should be dismissed.

## ARGUMENT

## I.   DPPS' ALLEGATIONS ARE INSUFFICIENTLY PLEADED UNDER *TWOMBLY*, *IQBAL* AND THIS COURT'S DECISIONS IN *WIRE HARNESSES*

Defendants showed in their opening brief that DPPs' allegations do not satisfy Rule 8's pleading requirements, as articulated in *Wire Harnesses*. Defs.' Collective Mot. to Dismiss the Direct Purchaser Pls.' Consol. Am. Class Action Compl. ("Mot.") at 2-5, ECF No. 106. DPPs respond that they are merely required to provide Defendants with notice of the claims against them and an opportunity to respond. That is not the law. As the Supreme Court held in *Twombly*, providing "fair notice" to defendants "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). DPPs have failed to make this showing.

Stripped of its repetition, DPPs' opposition puts forth three arguments as to why DPPs think that they have met the pleading test: (1) their Complaint is supposedly similar to the complaint approved in *In re Automotive Parts Antitrust Litig.* (*Wire Harnesses I*), No. 2:12-cv-00101, 2013 WL 2456584 (E.D. Mich. June 6, 2013) (Battani, J.) (Direct Purchaser Pls.' Brief in Opp'n to Defs.' Collective Mot. to Dismiss ("Opp'n") at 7-8, ECF No. 110); (2) their references to foreign government investigations and two United States plea agreements purportedly support the notion that there was some vast, two-industry conspiracy covering the sale of all industrial and automotive bearings sold in the United States (Opp'n at 8-15, 17-18); and (3) the Complaint's remaining generic allegations of market share and industry structure make plausible

the conspiracy they have decided to allege (Opp'n at 8-9, 18-19).  None of these arguments, viewed together, can save the Complaint from dismissal.

### A.    DPPs' Allegations Are Far Removed  From Those Found To Be Sufficient In *Wire Harnesses*

DPPs' comparison of their allegations to those upheld in *Wire Harnesses I* only serves to highlight the pleading deficiencies here.  In *Wire Harnesses*, direct purchaser plaintiffs alleged *facts* synthesized from eleven plea agreements, including multiple admissions about collusion allegedly affecting the United States during specified periods of time and at specified locations, meetings among competitors, and the methods of communication between competitors.  *See* Consol. Am. Class Action Compl. ("DP CACAC") ¶¶ 123, 127-132, 134-137, *Wire Harnesses I*, 2013 WL 2456584 (No. 2:12–md-02311), ECF No. 86.  Moreover, DPPs supplemented such allegations with facts about defendants' purported involvement in the Requests for Quotation ("RFQ") process and supposed efforts to rig certain bids.  *See id.* ¶¶ 92-98, 108-11.  Based on these detailed allegations, found to be supportive of the specific conspiracy that was alleged, this Court held that the DPPs in *Wire Harnesses* had met the relevant pleading standards.  *See Wire Harnesses I*, 2013 WL 2456584, at *5-6.

Here, by contrast, DPPs have done nothing more than make a series of conclusory allegations about the existence of a multi-industry conspiracy covering the sale of all industrial and automotive bearings sold in the United States, allegations that go far beyond the very different facts set forth in the two plea agreements at issue and the alleged foreign investigations. Further, DPPs' Complaint supplies no factual allegations as to how the alleged conspiracy operated or the methods by which it was maintained, and simply asserts that "Defendants and their co-conspirators entered into a continuing agreement, combination or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for [automotive and industrial

bearings] sold in the United States, and/or to allocate markets and customers for Bearings sold in the United States," that "Defendants succeeded in fixing, raising, maintaining, and stabilizing the prices, as well as allocating markets and/or customers for Bearings sold in the United States," and that "Defendants and their co-conspirators did those things they contracted, combined, or conspired to do." DPPs' Consol. Am. Class Action Compl. ("Compl.") ¶¶ 137-40, ECF No. 100. These are exactly the kind of conclusory allegations that courts routinely reject pursuant to *Twombly* and its progeny, and bear no resemblance to the factual allegations held sufficient in *Wire Harnesses*.

**B.    The Foreign Investigations And United States Plea Agreements Do Not Plausibly Support The Conspiracy DPPs Have Chosen To Allege**

DPPs claim that certain investigations by foreign governments and two plea agreements in the United States provide the requisite "factual enhancement" to render their claims plausible. Opp'n at 9. To the contrary, even a quick review of the plea agreements and foreign investigations reveals they bear no resemblance to the conspiracy that DPPs seek to plead here.

As an initial matter, DPPs have done nothing to show any link between the foreign investigations and the conspiracy they allege, which purportedly focused on United States sales. *See* Compl. ¶¶ 61-99.[1] This is because each of the foreign investigations involves foreign markets, foreign competition laws, and purported foreign conduct. The foreign investigations differ substantially from what DPPs have alleged in this case in terms of geographic scope, time

---

[1] DPPs argue that the Complaint's allegation (which has no factual support) that the foreign investigations are "globally-coordinated" with the United States Department of Justice ("DOJ") somehow ties foreign conduct (at issue in the foreign investigations) to the United States. *See* Opp'n Br at 18; Compl. ¶ 60. Such speculation is a far cry from the specific allegations in *Wire Harnesses* that international competition authorities coordinated with one another to execute near-simultaneous raids on various defendants in that case. *See Wire Harnesses I*, 2013 WL 2456584, at *13; DPP CACAC ¶¶ 116-18 (describing the raids). There are no such factual allegations of coordinated raids on Defendants here.

4

periods, parties allegedly involved, and products at issue.  For example, on their face, the proceedings in Japan involved automotive and industrial bearing sales in Japan—not the United States—and apparently focused on alleged conduct in 2010.[2]  Similarly, DPPs' own Complaint states that the European investigation involves two types of bearings (roller and plain bearings) sold to customers located in Europe (Compl. ¶ 88), while the Australian investigation is alleged to focus on a subsidiary of Defendant JTEKT and relates to the sale of two specific bearings types (ball and roller bearings) sold only to aftermarket customers in 2008 and 2009.  *Id.* ¶ 91.[3]  At bottom, none of the foreign proceedings are even alleged to have a connection to DPPs' conceived conspiracy for every automotive and industrial bearing sold in the United States from 2004 to the present.  Needless to say, this does not satisfy Plaintiffs' burden.  *See* Mot. at 6-8; *see also Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*, 738 F. Supp. 2d 505, 517 (D. Del. 2010) ("[s]imply saying 'me too' after a governmental investigation does not state a claim"); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 n.6, 52 (2d Cir. 2007).

As for the two plea agreements in the United States and JTEKT's statement of admissions in Canada, there is a huge gap between the conspiracy they describe and the one described in DPPs' Complaint.  Specifically, the plea agreements and the Canadian admission

---

[2] While one article cited by DPPs states that certain of the Defendants had raised bearing prices several times "since" 2004, the actual proceedings themselves appear to be focused on conduct that occurred in 2010.  *See* Compl. ¶ 66; "FTC targets bearing makers over price cartel," JAPAN TIMES, June 15, 2012, http://www.japantimes.co.jp/news/2012/06/15/business/ftc-targets-bearing-makers-over-price-cartel/ (JFTC complaint alleged that coordination took place from *May-August 2010*); Compl. ¶ 67 (citing article); Press Release, JFTC, The JFTC Issued Cease and Desist Orders and Surcharge Payment Orders Against Bearings Manufacturers (March 29, 2013) (JFTC issued cease and desist orders related to bearings delivered to customers *in Japan on and after July 1, 2010*); Compl. ¶ 73 (summarizing cease and desist orders); *see also* Compl. ¶¶ 68-69 (quoting a December 28, 2012 opinion from the Tokyo District Court finding that Defendants NTN Corp., NSK, JTEKT, and Nachi-Fujikoshi met *during the end of May and August 2010* for the purpose of raising industrial bearing prices *on or after July 1, 2010*).

[3] DPPs fail to provide any details about the scope of the alleged investigations in Singapore and Korea.  Compl. ¶¶ 95-99.

relate solely to automotive (not industrial) bearings sold by NSK and JTEKT (not by other Defendants), and only to Toyota and possibly other Japanese automakers (not to the entire United States industry).  *See* Information ¶¶ 4, 6, *United States v. JTEKT Corp.*, No. 1:13-cr-00104-HJW (S.D. Ohio Sept. 26, 2013); Information ¶¶ 4, 6, *United States v. NSK Ltd.*, No. 1:13-cr-00103-HJW (S.D. Ohio Sept. 26, 2013); Statement of Admissions ¶¶ 10, 15, JTEKT Corp., July 11, 2013.  These developments thus provide no support for the alleged conspiracy which the DPPs have chosen to plead, involving both industrial and automotive bearings, covering all Defendants, and covering all automotive and industrial customers in the United States.  DPPs should not be permitted, under *Twombly* and *Wire Harnesses*, to just "make up" a broader conspiracy when the factual allegations they present do not support that claim.  *See*, *e.g.*, *In re Refrigerant Compressors Antitrust Litig.* (*Compressors II*), No. 2:09–md–02042, 2012 WL 2114997, at *7-8 (E.D. Mich. June 11, 2012) (plaintiffs' vague allegations did not support inference of a broad conspiracy involving all defendants); *see also In re Fla. Cement & Concrete Antitrust Litig.* (*Florida Concrete*), 746 F. Supp. 2d 1291, 1315-16 (S.D. Fla. 2010) (foreign and state investigations did not plausibly suggest existence of a broad conspiracy); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011).

DPPs erroneously claim that Defendants are attempting to "limit the conspiracy to only the express terms of the guilty pleas."  Opp'n at 10.  This is not correct.  Defendants claim that if Plaintiffs choose to allege a conspiracy broader than the plea agreements, they have to allege facts that would make the broader conspiracy plausible.  *See*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) (applying defendant-by-defendant analysis to determine if a plausible claim had been alleged against any defendant).  DPPs simply have no additional facts to support the two-industry U.S. conspiracy that they would like to pursue.  *Cf. In re Iowa Ready-Mix Concrete*

*Antitrust Litig.*, 768 F. Supp. 2d at 975 (the existence of several plea agreements did not support allegations of a broader conspiracy where plaintiffs failed to plausibly allege the "larger picture" justifying such an inference).[4]

### C.   DPPs' Remaining Factual Allegations Also Do Not Plausibly Support The Conspiracy Plaintiffs Describe

DPPs also have failed to allege any facts describing the operation of the alleged conspiracy or Defendants' respective roles in it, relying instead on what the DPPs describe as mere "opportunities" to conspire.  Mot. at 2-5, 9-10.  Likewise, DPPs have alleged no facts about the automotive and industrial bearings industries that would transform their defective allegations into plausible claims.  *Id.* at 10.  Rather than address these deficiencies, DPPs instead complain that the complaint should not be "dissect[ed]."  Opp'n at 9-10, 16.

That is not what Defendants are asking.  The factual allegations may be viewed as a whole, but under the strictures of *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and a reviewing court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 678-79.  There, the Supreme Court identified specific allegations that should not be taken at face value before finding that the remaining factual allegations, when viewed as a whole, were insufficient to support plaintiff's claims.  *Id.* at 679.  This is the same approach that Defendants urge the Court to take here.  For

---

[4] Defendants are aware that this Court factually distinguished *Iowa Concrete* in *Wire Harnesses I.  See* 2013 WL 2456584, at *7.  Nonetheless, *Iowa Concrete* clearly establishes that where, as here, plaintiffs' factual allegations do not support the likelihood of a broader conspiracy, a court is not required to infer the existence of such a broad conspiracy from more narrow facts set forth in plea agreements.

these reasons, DPPs' claims fail to meet the pleading threshold recognized by this Court in *Wire Harnesses* and should be dismissed.[5]

## II.   PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE CONSTITUTIONAL OR ANTITRUST STANDING

DPPs have not pleaded sufficient facts to establish either constitutional or antitrust standing. *See* Mot. at 10-14. Far from "attempt[ing] to inject a heightened standard into antitrust pleading," as DPPs claim, Defendants rely on well-established case law, as well as this Court's decisions in *Wire Harnesses*, to establish this point. Opp'n at 20. Indeed, it is DPPs who advance a legally unsupported standard, *i.e.*, that they are not required to plead anything more than conclusory and generalized allegations at this stage. *See, e.g., id.* at 22. DPPs accordingly argue that the vague and unsupported allegations of injury that they have pleaded satisfy their burden. *Id.* at 23-24. DPPs are wrong, and consequently, their Complaint should be dismissed.

### A.   DPPs' Conclusory Allegations Are Grossly Insufficient To Establish Standing

DPPs do not offer *any* factual allegations to establish the requisite injury to establish standing. Indeed, DPPs do not allege even the most basic information about their purported bearings purchases or the supposed connection between these purchases and the conspiracy alleged. *See* Mot. at 11-13. As a result, DPPs fall far short of demonstrating that they have personally suffered any harm caused by Defendants and therefore lack standing to assert any claim. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (constitutional standing requires pleading an "injury in fact" that is both "concrete and particularized" and "actual or imminent" along with a "causal connection between the injury and the conduct"

---

[5] Further, while DPPs claim that the "particular characteristics of the Bearings market" render their conspiracy allegations more plausible (Opp'n at 9), Defendants have shown that the vague, generalized market figures cited by DPPs are incapable of providing all that is missing to plausibly support their vast, multi-industry conspiracy allegations. *See* Mot. at 10.

alleged);[6] *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) ("'a naked assertion' of antitrust injury … is not enough; an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury"); *Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 80 (D.D.C. 2013) ("A plaintiff must personally suffer the harm. In that aspect, the injury-in-fact prerequisite in antitrust cases mirrors the Article III constitutional standing requirement that all plaintiffs in federal cases must satisfy."); *see also* Mot. at 10-14. DPPs have also failed to demonstrate a "causal connection between the antitrust violation and harm to the [DPPs]" or "the nature of the [DPPs'] alleged injury including the status of the plaintiff as consumer or competitor in the relevant market." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 402 (6th Cir. 2012).

In their opposition brief, DPPs take the position that they can satisfy their burden to plead standing merely by combining a non-specific allegation that DPPs "purchased Bearings in the United States from one or more of the Defendants" (Compl. ¶ 2) with the conclusory allegations that (a) there was an industry-wide conspiracy affecting all bearings customers in the United States (Compl. ¶¶ 137-139); and (b) they paid more for bearings than they otherwise would have paid in a competitive market (Compl. ¶ 141). *See* Opp'n at 20. As an initial matter, DPPs' pleadings are insufficient to support an inference that any of the DPPs did indeed purchase bearings from one or more of the Defendants, as none of the DPPs pleaded anything about what types of bearings they purchased, or when or from whom they purchased such bearings. *See, e.g.,* Mot. at 11-12. DPPs also allege *no facts*—despite having such facts within their

---

[6] Aside from a short footnote simply asserting that they have established constitutional standing by virtue of antitrust standing, DPPs do not address Defendants' arguments regarding constitutional standing. Opp'n at 24 n.5. Defendants therefore refer the Court to the arguments made in their Motion, which establish that DPPs have not satisfied their burden of pleading constitutional standing. Mot. at 13-14.

possession—regarding the prices at which bearings were purchased, how prices for bearings were negotiated, or the process by which they purchased bearings. *See* Mot. at 11-12. As a result, DPPs' allegations do not show how the purported industry-wide conspiracy that they conceive could have impacted *their* purchases of bearings.[7]

The Court's *Wire Harnesses* decision further establishes the inadequacy of DPPs' Complaint. The *Wire Harnesses* complaint that this Court found satisfactory: (i) identified the RFQ bidding process through which the conspiracy functioned; (ii) carefully detailed the RFQ bidding process; and (iii) specifically alleged that "[s]uppliers to OEMs have been required to directly purchase Wire Harness Products from Defendants at prices established by OEMs and Defendants in the bidding process." DP CACAC ¶¶ 92-98; *see also* Mot. at 13. DPPs do not deny that their complaint provides no such allegations. DPPs in fact assert that "[t]here is no such purchasing process alleged here." Opp'n at 23-24. It is exactly this deficiency, however, that renders DPPs unable to establish standing. In other words, there is nothing in the Complaint here—unlike the complaint in *Wire Harnesses*—from which this Court could plausibly infer that any of the DPPs "paid more for Bearings" (Compl. at ¶¶ 134, 141), much less that they did so as a result of any acts of any of the Defendants. DPPs accordingly cannot satisfy their burden of pleading the personal injury required for standing to bring their claims. *See, e.g.*, Mot. at 11.[8]

---

[7] Further, as argued above, DPPs do not plead any facts to suggest a connection between the conduct admitted in the only two United States guilty pleas and the bearings that they purchased. That is, having failed entirely to explain the process by which they purchased bearings, DPPs also fail to plead facts indicating a connection between their purported bearings purchases and the limited RFQs issued by Japanese auto manufacturers to which the guilty pleas relate. *See* Mot. at 12, n.4. DPPs' allegations simply do not indicate how the limited conspiracy admitted to in the two guilty pleas could have impacted their purchases of bearings.

[8] DPPs further argue that they have "alleged sufficient injury to state an antitrust claim against each of the Defendants" because Defendants "are jointly and severally liable for all of the overcharges of the conspiracy." Opp'n at 20 (citing *Paper Systems Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 634 (7th Cir. 2002) and *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257

**B.**     **DPPs Fail To Distinguish Squarely-Applicable Case Law**

DPPs' only other arguments that they have adequately pleaded standing rely on erroneous analyses of applicable case law.  *First*, DPPs attempt to distinguish their Complaint from the one found defective by a court of this district in *In re Refrigerant Compressors Antitrust Litigation* by arguing that "the complaint there was drafted so as to make it 'impossible to determine which, *if any*, of the named [direct purchaser] Plaintiffs allege that they purchased compressors directly from a Defendant … as opposed to products containing compressors.'"  Opp'n at 22 (citing *In re Refrigerant Compressors Antitrust Litig.* (*Refrigerant Compressors I*), 795 F. Supp. 2d 647, 659 (E.D. Mich. 2011)).  DPPs misread the decision.  The court found the complaint in that case defective not only because it failed to specify "whether [the plaintiffs] purchased compressors, or products containing compressors," but also, critically, because it failed to identify "the Defendant(s) from whom [they] purchased … [and] where or when each named D[irect] P[urchaser] Plaintiff purchased the … [p]roducts."  *Refrigerant Compressors I*, 795 F. Supp. 2d at 652, 660.  DPPs' Complaint is missing the same critical allegations and should be found defective for the same reasons.

*Second*, DPPs challenge the relevance of *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litigation* (*DIPF*),  No. 12-711, 2013 WL 812143, at *9 (D.N.J. Mar. 5, 2013) on the grounds that the case involved three distinct classes of direct purchaser plaintiffs. Opp'n at 22-23.  That difference is inapposite here.  In *DIPF*, the court found that regardless of the class to which direct purchasers belonged, the plaintiffs had adequately demonstrated standing by pleading specific facts regarding the conspiracy, the market, the impact of the

---

(7th Cir. 1980)).  Neither case cited by DPPs addresses the sufficiency of factual allegations to establish standing.  The fact that Defendants may be jointly and severally liable does not alter DPPs' duty to allege an injury that is both concrete and particularized and actual or imminent.

conspiracy on all plaintiffs, "the type of DIPF they purchased, from which defendant they purchased DIPF, and the time period during which the purchases were made." *DIPF*, 2013 WL 812143, at *9. DPPs do not make allegations that even come close to those found sufficient in *DIPF*. *DIPF* and *Refrigerant Compressors I*, as well as the other cases that Defendants cite (*see* Mot. at 10-14), establish that DPPs' allegations fall far short of those required to plead standing.

## III.   DPPS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

### A.   The Discovery Rule Does Not Apply

DPPs' suggestion that their claims are timely because of the "discovery rule" is wrong; that rule does not apply to private antitrust claims brought under the Clayton Act. Opp'n at 25-26.[9]

The discovery rule is a common law accrual rule which, in some cases, "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). In *Klehr v. AO Smith Corp.*, 521 U.S. 179 (1997), the Supreme Court determined that, in the context of a price-fixing case, the statutory period runs "regardless of the plaintiff's knowledge of the alleged illegality." *Id.* at 189 (internal quotations omitted). And, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Id.* (citations omitted). Thus, the accrual rule applied to the Clayton Act is an "injury-only" test; knowledge, or lack thereof, is entirely immaterial.

---

[9] DPPs erroneously suggest that Defendants ignored the potential application of this rule in their Motion to Dismiss. Opp'n at 24 ("[Defendants] ignore[] the discovery rule …"). However, Defendants' opening brief clearly states that lack of knowledge alone is insufficient to toll the statute of limitations and explains that the Clayton Act provides no such discovery rule. Mot. at 21.

In a concurring opinion in *Klehr*, Justice Scalia explained that, "of the four main accrual rules (injury, injury discovery, injury and pattern discovery, and last predicate act), the appropriate accrual rule [for civil RICO claims] is the Clayton Act 'injury' rule—the 'cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.'" *Id*. at 198 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)) (opinion concurring in part and concurring in judgment); *see also Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315 (6th Cir. 2007) ("Accrual occurs 'when a defendant commits an act that injures a plaintiff's business.'") (quoting *Zenith*, 401 U.S. at 338). In *Rotella v. Wood*, 528 U.S. 549, 554 n.2 (2000), a unanimous Supreme Court returned to the *Klehr* decision, citing Justice Scalia's concurrence for the proposition that a pure injury occurrence rule of the kind contemplated by the Clayton Act, "under which discovery would be irrelevant," might also be appropriate for civil RICO claims. The discovery rule is simply inapplicable to DPPs' claims.

The only case DPPs cite in response is a non-binding Seventh Circuit opinion that incorrectly fails to acknowledge that result. *See* Opp'n at 25 (citing *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006)).[10] *In re Copper* cites the correct general language from *Zenith*, but states that "[a]s in other areas of the law, however, in the absence of a contrary directive from Congress, this rule is qualified by the discovery rule…." 436 F.3d at 789 (citing

---

[10] DPPs' reliance on Sixth Circuit case law applying fraudulent concealment, not the discovery rule, is likewise misplaced. *See* Opp'n at 25-26; *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (noting fraudulent concealment, not the discovery rule, requires plaintiffs' lack of knowledge of the basis of the cause of action and due diligence); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 536 (6th Cir. 2008) (noting statute of limitation may be tolled until the plaintiff discovers or should have discovered the injury, *such as by the defendant's acts of fraudulent concealment*). *In re Packaged Ice Antitrust Litigation*, 779 F. Supp. 2d 642, 670 (E.D. Mich. 2011), is also inapposite. There, the court held that the defendants failed to show at the pleading stage that indirect purchasers, *pursuing state claims*, would "be unable to establish the applicability of any state discovery rules that may apply to their state law claims." *Id.*

13

*Cada*, 920 F.2d at 450).  *Cada*, in turn, says only that the discovery rule "is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress."   920 F.2d at 450.  *Cada* questions when an age discrimination suit accrued and provides no support for applying a discovery rule accrual in the antitrust context.  *Klehr*, *Zenith*, and *Rotella* control here as they clearly apply a different accrual rule to antitrust claims.

### B.      DPPs Do Not Adequately Plead Fraudulent Concealment

DPPs agree they must plead fraudulent concealment "with particularity," and that unless they do so, they cannot recover damages prior to July 3, 2008.  Opp'n at 26.  But DPPs cannot point to any *facts*—as opposed to bare conclusions—in their Complaint that show (i) "affirmative acts" of concealment by Defendants; (ii) that prevented DPPs from discovering their claims within the limitations period; and (iii) that DPPs' exercised due diligence until they discovered their claims, each of which must be alleged with particularity to meet the Sixth Circuit's "stringent" test for pleading fraudulent concealment.  *See Pinney Dock & Transp. Co. v. Penn. Central Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988).

DPPs, recognizing the deficiencies in the Complaint's allegations, attempt to salvage their fraudulent concealment claims by relying on the guilty pleas entered by JTEKT and NSK, which include charges that these Defendants "employ[ed] measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations."  Opp'n at 28-29.  Yet these allegations are not contained in DPPs' Complaint.  *See* Compl. ¶¶ 122-132.  Nor are they sufficient to toll the statute of limitations.  Those boiler-plate allegations do not constitute affirmative acts of concealment, nor do they satisfy the fraudulent concealment

doctrine's third element—DPPs' due diligence until the discovery of their alleged cause of action.

DPPs rely exclusively on the Court's earlier decision in *Wire Harnesses*, and its interpretation of *Carrier Corp.*, to salvage their claims. Opp'n at 28-29. To the extent this Court found similar allegations sufficient for the purposes of pleading affirmative acts of concealment in *Wire Harnesses*, Defendants respectfully submit that this Court erred in its interpretation of Sixth Circuit law. In *Carrier Corp.*, the complaint alleged "specific details" of the "alleged cover-up," including "establish[ing] security rules to prevent a paper trail" and "us[ing] a coding-system to hide the identity of the producers in their documents." 673 F.3d at 447. That conduct was "sufficiently affirmative" to satisfy the wrongful concealment element "because the alleged actions involved taking *active steps to hide evidence*, as opposed to simply meeting in secret." *Id*. (emphasis added). In contrast, DPPs do not allege that Defendants hid or destroyed evidence. *See* Compl. ¶¶ 122-131. Nor is such conduct established by the guilty pleas, which provide only that unnamed co-conspirators met secretly "using code names and … private residences or remote locations[.]" *See* Opp'n at 28-29. *Carrier Corp.* made clear that a complaint's bare allegations of covert meetings and false public statements by defendants (*see* Compl. ¶¶ 126-27, 130, 132), without more, lack "the requisite particularity" because they fail "to specify 'the time, place, and content of the alleged' fraudulent acts." 673 F.3d at 447 (citation omitted); *see also Universal Bearing Co. v. Baker Bearing Co.*, No. 10–11142, 2013 WL 1211463, at *4 (E.D. Mich. Mar. 25, 2013) (citation omitted) ("The allegations within the complaint must inform each individual defendant separately of the specific acts of which he is accused.").[11]

---

[11] Despite recognizing that "mere silence or unwillingness to divulge wrongful activities is not sufficient," DPPs appear to argue that their allegations are sufficient as the alleged conspiracy was inherently self-concealing. Opp'n at 27-28. Yet for this proposition, DPPs rely on cases

Nor do DPPs allege that they conducted any due diligence to discover their claims during the limitations period. The Complaint alleges only that, from 2004 until the government investigations became public in July 2011, DPPs "did not learn or discover the operative facts giving rise to their claims, despite due diligence," and that DPPs "did not and could not have discovered Defendants' … unlawful contract, combination, or conspiracy at any earlier date, despite due diligence." Compl. ¶¶ 122, 131. That failing is fatal. In *Wire Harnesses*, this Court noted that where there is evidence that plaintiffs undertook no investigation, fraudulent concealment cannot be invoked. *Wire Harnesses I*, 2013 WL 2456584 at *13.

DPPs wrongly argue that their due diligence allegations are no different than those sustained in *Carrier Corp.* and *Wire Harnesses*. In *Carrier Corp.*, the plaintiff alleged that its due diligence included asking its suppliers about the alleged conspiracy, examining defendants' public statements and filings, reviewing the European Commission's findings about the cartel, and then retaining outside counsel and an economist to conduct a more thorough investigation. 673 F.3d at 448. Similarly, in *Wire Harnesses*, the Court noted that the plaintiffs "studied prices of the specific products involved." *Wire Harnesses I*, 2013 WL 2456584, at *13. Here, DPPs' Complaint does not allege that DPPs conducted *any* investigation, which as both *Carrier Corp.* and this Court observed, is a sufficient basis alone for dismissal. *Carrier Corp.*, 673 F.3d at 448 ("[W]e may dismiss a claim of fraudulent concealment when it is obvious from the complaint that the plaintiff conducted absolutely no investigation ….") (citing *Ruth v. Unifund CCR Partners,* 604 F.3d 908, 911–14 (6th Cir. 2010)); *Wire Harnesses I*, 2013 WL 2456584, at *13 (same); *see also Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)

---

focusing on allegations of bid-rigging, distinct from and not applicable to the price-fixing conspiracy alleged here. *See* Opp'n at 28.

16

("mere allegation of due diligence without asserting what steps were taken is insufficient"); *Refrigerant Compressors I*, 795 F. Supp. 2d at 666 (dismissing fraudulent concealment claim where plaintiffs alleged due diligence without asserting what steps were allegedly taken).

The deficiency of DPPs' due diligence allegations is particularly apparent here. DPPs rely on publicly-available data and information to support their alleged conspiracy, including a purported "culture of collusion" in the bearings industry, yet apparently performed no investigation of their own during the putative class period. *See*, *e.g.*, Compl. ¶¶ 49-59, 108-14. In other words, DPPs contend that this publicly-available evidence helps establish a conspiracy (*see id.*), but DPPs do not, and cannot, contend that such publicly-available evidence was ever concealed. *See Wire Harnesses I*, 2013 WL 2456584, at *13 (sustaining fraudulent concealment claims as, unlike here, there was "no argument advanced that DPPs ignored available information that would have aroused suspicion and prompted an investigation."). Thus, DPPs fail to adequately plead fraudulent concealment.

## IV.   DPPS HAVE NOT ADEQUATELY PLEADED A CONTINUING CONSPIRACY TO SUPPORT THEIR REQUEST FOR INJUNCTIVE RELIEF

DPPs' opposition offers nothing to cure DPPs' failure to plead facts that plausibly establish the "likelihood of substantial and immediate irreparable injury" necessary to support a claim for injunctive relief. *City of L.A. v. Lyons*, 461 U.S. 95, 103, 111 (1983). *First*, DPPs still cannot identify a single fact in the Complaint to support the inference of a continuing conspiracy or a threat of future anticompetitive conduct; they do not even allege activity after 2011, which is when the DOJ has indicated that any illegal conduct regarding bearings ended. *See* Information ¶ 6, *United States v. JTEKT*, No. 13-CR-104; Information ¶ 6, *United States v. NSK Ltd.*, No. 13-CR-103. Instead, DPPs refer back to their general allegations of a ten-year conspiracy, Opp'n at 32, but this is not enough. *Lyons*, 461 U.S. at 103 ("Past wrongs do not in themselves amount to

[] real and immediate injury"). Particularly where, as is the case here, wide-scale government investigations—which have led to guilty pleas in multiple jurisdictions, including the United States—place the entire industry under extensive scrutiny, it defies logic and common sense to suggest that Defendants would continue to operate an ongoing conspiracy under the watch of antitrust regulators across the world. *Second*, DPPs do not even respond to Defendants' argument that they have failed to plead any facts alleging that any of them will be wronged again or are even likely to purchase a bearing in the future. *See* Mot. at 24. Because DPPs cannot identify allegations to plausibly support an ongoing conspiracy or the threat of real or immediate future harm, their request for injunctive relief should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss DPPs' Complaint in its entirety. In the alternative, the Court should dismiss DPPs' claims to the extent they precede July 3, 2008 and dismiss DPPs' claims for injunctive relief.

March 25, 2014                                Respectfully submitted,

                                                     WINSTON & STRAWN LLP

                                                     By:   /s/ A. Paul Victor (w/consent)
                                                     A. PAUL VICTOR (*pro hac vice*)
                                                     JEFFREY L. KESSLER (*pro hac vice*)
                                                     MOLLY M. DONOVAN (*pro hac vice*)
                                                     ELIZABETH A. CATE (*pro hac vice*)
                                                     200 Park Avenue
                                                     New York, NY 10166
                                                     Telephone: (212) 294-6700
                                                     Facsimile: (212) 294-4700
                                                     pvictor@winston.com
                                                     jkessler@winston.com
                                                     mmdonovan@winston.com
                                                     ecate@winston.com

                                                     FRED K. HERRMANN (P49519)
                                                     500 Woodward Avenue, Suite 2500

18

Detroit, MI 48226
Tel. (313) 961-0200
fkh@krwlaw.com

Attorneys for Defendants *NTN CORPORATION and NTN USA CORPORATION*

DYKEMA GOSSETT PLLC

/s/ Howard B. Iwrey (w/ consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
39577 Woodward Avenue; Suite 300
Bloomfield Hills, MI 48304
248-203-0700
hiwrey@dykema.com
bmoore@dykema.com

REED SMITH LLP

Debra H. Dermody
Michelle Mantine
Reed Smith Centre
225 Fifth Ave.
Pittsburgh, PA 15222-2716
412-288-3302
ddermody@reedsmith.com
mmantine@reedsmith.com

Attorneys for Defendant *AB SKF*

SHEARMAN & STERLING LLP

/s/ Heather L. Kafele (w/consent)
Heather L. Kafele
Keith R. Palfin
Alison R. Welcher
801 Pennsylvania Avenue
Suite 900
Washington, DC 20004
202-508-8097
202-508-8001 (facsimile)
heather.kafele@shearman.com
keith.palfin@shearman.com
alison.welcher@shearman.com

LANE POWELL PC

/s/Kenneth R. Davis II (w/consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi

LANE POWELL PC
ODS Tower
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
(503) 778-2100
(503) 778-2200 (facsimile)
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchi@lanepowell.com

Larry S. Gangnes
Connor B. Shively
LANE POWELL PC
1420 Fifth Avenue, Suite 4100
Seattle, WA  98101-2338
(206) 223-7000
(206) 223-7107 (facsimile)
gangnesl@lanepowell.com
shivelyc@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone: (248) 528-1111
Facsimile: (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

19

PAESANO AKKASHIAN, PC

Brian M. Akkashian
132 N. Old Woodward Avenue
Birmingham, MI 48009
248-792-6886
bakkashian@paesanoakkashian.com

Attorneys for Defendants *JTEKT
Corporation and JTEKT North America
Corp. (formerly d/b/a Koyo Corporation of
U.S.A.)*

WILMER CUTLER PICKERING HALE
AND DORR LLP

/s/ Eric Mahr (w/ consent)
Eric Mahr
Stacy E. Frazier
1875 Pennsylvania Ave., NW
Washington, DC 20006
202-663-6446
eric.mahr@wilmerhale.com
stacy.frazier@wilmerhale.com

Attorneys for Defendants *Schaeffler AG
and Schaeffler Group USA, Incorporated*

Attorneys for Defendants *Nachi-Fujikoshi
Corp. and Nachi America, Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

/s/ Jeremy Calsyn (w/consent)
Jeremy Calsyn
Mark Leddy
2000 Pennsylvania Avenue, NW
Washington, DC 20006
202-974-1522
jcalsyn@cgsh.com
mleddy@cgsh.com

HONIGMAN, MILLER, SCHWARTZ AND
COHN LLP

David A. Ettinger
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3506
313-465-7368
dettinger@honigman.com

Attorneys for *Defendants NSK Ltd. and NSK
Americas, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2014, I caused the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: March 25, 2014                    By   /s/ A. Paul Victor
                                              A. Paul Victor