## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

———————————————————————

In Re:  AUTOMOTIVE PARTS : 12-md-02311

ANTITRUST LITIGATION : Honorable Marianne O. Battani

———————————————————————:

In Re: BEARINGS CASES :

———————————————————————:

THIS DOCUMENT RELATES TO: : 2:12-cv-00501-MOB-MKM

ALL DIRECT PURCHASER ACTIONS : 2:15-cv-12068- MOB-MKM

———————————————————————:

## MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
## SETTLEMENT WITH SCHAEFFLER DEFENDANTS AND
## FOR AUTHORIZATION TO DISSEMINATE
## NOTICE TO THE DIRECT PURCHASER SETTLEMENT CLASS

Direct Purchaser Plaintiffs hereby move the Court, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, for preliminary approval of the proposed settlement with Defendants

Schaeffler Group USA Inc., Schaeffler Technologies AG & Co. KG (formerly Schaeffler

Technologies GmbH & Co. KG), and FAG Kugelfischer GmbH (collectively, "Schaeffler"), and

for authorization to disseminate notice to the Direct Purchaser Settlement Class.  In support of

this motion, Direct Purchaser Plaintiffs rely upon the accompanying memorandum of law, which

is incorporated by reference herein.

Schaeffler consents to this motion and to the entry of the proposed order preliminarily

approving the proposed settlement and authorizing dissemination of notice.

DATED: June 14, 2017                        Respectfully submitted,


                                             /s/David H. Fink
                                            David H. Fink (P28235)
                                            Darryl Bressack (P67820)
                                            Nathan J. Fink (P75185)
                                            FINK + ASSOCIATES LAW
                                            38500 Woodward Ave; Suite 350
                                            Bloomfield Hills, MI 48304
                                            Telephone: (248) 971-2500

                                            *Interim Liaison Counsel for the Direct
                                            Purchaser Plaintiffs*

Steven A. Kanner
William H. London                           Joseph C. Kohn
Michael E. Moskovitz                        William E. Hoese
FREED KANNER LONDON                         Douglas A. Abrahams
   & MILLEN LLC                             KOHN, SWIFT & GRAF, P.C.
2201 Waukegan Road, Suite 130               One South Broad Street, Suite 2100
Bannockburn, IL  60015                      Philadelphia, PA  19107
Telephone: (224) 632-4500                   Telephone: (215) 238-1700


Gregory P. Hansel                           Eugene A. Spector
Randall B. Weill                            William G. Caldes
Michael S. Smith                            Jonathan M. Jagher
PRETI, FLAHERTY, BELIVEAU                   Jeffrey L. Spector
   & PACHIOS LLP                            SPECTOR ROSEMAN KODROFF
One City Center, P.O. Box 9546                 & WILLIS, P.C.
Portland, ME  04112-9546                    1818 Market Street, Suite 2500
Telephone: (207) 791-3000                   Philadelphia, PA  19103
                                            Telephone: (215) 496-0300


*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

M. John Dominguez                           Solomon B. Cera
COHEN, MILSTEIN SELLERS                     Thomas C. Bright
& TOLL PLLC                                 Pamela A. Markert
2925 PGA Boulevard, Suite 200               CERA LLP
Palm Beach Gardens, FL 33410                595 Market Street, Suite 2300
Telephone: (561) 515-1431                   San Francisco, CA 94105-2835
                                            Telephone: (415) 777-2230


*Plaintiffs' Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| _____ | : | |
| In Re:  AUTOMOTIVE PARTS | : | **12-md-02311** |
| ANTITRUST LITIGATION | : | **Honorable Marianne O. Battani** |
| _____ | : | |
| | : | |
| In Re: BEARINGS CASES | : | |
| _____ | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | **2:12-cv-00501-MOB-MKM** |
| ALL DIRECT PURCHASER ACTIONS | : | **2:15-cv-12068- MOB-MKM** |
| _____ | : | |

**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY**
**APPROVAL OF PROPOSED SETTLEMENT WITH SCHAEFFLER DEFENDANTS**
**AND FOR AUTHORIZATION TO DISSEMINATE**
<u>**NOTICE TO THE DIRECT PURCHASER SETTLEMENT CLASS**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................... iii

STATEMENT OF ISSUES PRESENTED...................................................... vii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............... viii

INTRODUCTION .......................................................................................... 1

I.      BACKGROUND ................................................................................... 2

II.     TERMS OF THE SCHAEFFLER SETTLEMENT AGREEMENT................................ 4

       A.     The Direct Purchaser Settlement Class................................ 5

       B.     The Settlement Amount ...................................................... 5

       C.     Releases............................................................................. 6

       D.     Cooperation....................................................................... 6

III.    PROPOSED TIMETABLE ................................................................... 7

IV.    THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF CLASS NOTICE .................... 8

       A.     The Governing Standards. ................................................... 8

       B.     The Proposed Settlement is Fair and Within the Range of Possible Approval. ... 10

       C.     Consideration of Final Approval Criteria Supports Preliminary Approval. ......... 11

             1.     The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval. ............................................................................ 13

             2.     The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval. ...................................................... 14

             3.     The Judgment of Experienced Counsel Supports Approval. .................... 15

             4.     The Amount of Discovery Completed and the Character of the Evidence Uncovered Are Sufficient. ...................................... 15

i

     5.     The Reaction of Class Members ............................................................... 16

     6.     The Settlement Agreement Is the Product of Arm's-Length Negotiations16

     7.     The Settlement Is Consistent with the Public Interest. ............................ 17

V.     THE NOTICE PROGRAM SHOULD BE APPROVED ................................................ 17

VI.     PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER
SETTLEMENT CLASS IS WARRANTED .................................................................. 19

     A.     The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a). ............... 19

          1.     The Settlement Class is Sufficiently Numerous ...................................... 20

          2.     There are Common Questions of Law and Fact ...................................... 20

          3.     Plaintiffs' Claims are Typical of Those of the Settlement Class ............. 21

          4.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .. 22

     B.     Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement
Purposes ............................................................................................................... 23

          1.     Common Legal and Factual Questions Predominate ............................... 23

          2.     A Class Action is Superior to Other Methods of Adjudication ............... 24

VII.     CONCLUSION ............................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................... 19, 23, 25

*Automotive Parts Antitrust Litig.,* 12-MD-02311,
    2014 WL 4272772 (E.D. Mich. Aug. 29, 2014) ...................................................... 3

*Automotive Parts Antitrust Litig.,* 12-MD-02311,
    2014 WL 4724883 (E.D. Mich. Sept. 23, 2014) ...................................................... 3

*Barry v. Corrigan,*
    2015 WL 136238 (E.D. Mich. Jan 9, 2015) ...................................................... 20, 22

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) ................................................................................ 23

*Berry v. Sch. Dist. of City of Benton Harbor,*
    184 F.R.D. 93 (W.D. Mich. 1998) ...................................................................... 9, 12

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 (1981) ................................................................................................ 11

*Date v. Sony Electronics, Inc.,*
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ................................. 15, 20, 21

*Davidson v. Henkel Corp.,*
    302 F.R.D. 427 (E.D. Mich. 2014) ....................................................................... 20

*Dick v. Sprint Commc'ns,*
    297 F.R.D. 283 (W.D. Ky. 2014) .......................................................................... 11

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
    2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ..................................................... 20

*Ford v. Fed.-Mogul Corp.,*
    2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ..................................................... 13, 15

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) .................................................................................. 9

*Granada Invs. Inc. v. DWG Corp.,*
    962 F. 2d 1203 (6th Cir. 1992) ......................................................................... 9, 17

*Griffin v. Flagstar Bancorp, Inc.,*
   No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................... passim

*Hoving v. Lawyers Title Ins. Co.,*
   256 F.R.D. 555 (E.D. Mich. 2009) ...................................................................... 23

*In re Am. Med. Sys., Inc.,*
   75 F.3d 1069 (6th Cir. 1996) ............................................................................. 20

*In re Auto. Refinishing Paint Antitrust Litig.,*
   617 F.Supp.2d. 336 (E.D.Pa.2007) ............................................................... 11, 12

*In re Cardizem CD Antitrust Litig,*
   200 F.R.D. 297 (E.D. Mich. 2007) .................................................................... 25

*In re Cardizem CD Antitrust Litig.,*
   218 F.R.D. 508 (E.D. Mich. 2003) ............................................................... passim

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
   No. 3:08–MD01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ....................... 11

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,*
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................. 9, 15

*In re Flat Glass Antitrust Litig.,*
   191 F.R.D 472 (W.D. Pa. 1999) ....................................................................... 21

*In re Flonase Antitrust Litig.,*
   284 F.R.D. 207 (E.D. Pa. 2012) ....................................................................... 25

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y.2004) ....................................................................... 16

*In re Insurance Brokerage Antitrust Litig.,*
   297 F.R.D. 136 ........................................................................................... 17, 18

*In re Linerboard Antitrust Litig.,*
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ......................................................... 9, 10, 14

*In re NASDAQ Market-Makers Antitrust Litig.,*
   169 F.R.D. 493 (S.D.N.Y 1996) ....................................................................... 25

*In re Packaged Ice Antitrust Litig.,*
   No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ................... 1, 8, 9, 16

iv

*In re Packaged Ice Antitrust Litig.,*
No. 08-MD–1952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ................................... passim

*In re Polyurethane Foam Antitrust Litig.,*
No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ........................................ 13

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
584 F. Supp. 2d 697 (M.D. Pa. 2008) ............................................................................. 10

*In re Scrap Metal Antitrust Litig.,*
527 F.3d 517 (6th Cir. 2008) ................................................................................. 23, 24

*In re Southeastern Milk Antitrust Litig.,*
2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ........................................................................ 24

*In re Southeastern Milk Antitrust Litig.*, 2:07- CV-208,
2013 WL 2155379 (E.D. Tenn. May17, 2013) ........................................................................ 11

*In re Telectronics Pacing Sys. Inc.,*
137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................................................. passim

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
722 F.3d 838 (6th Cir. 2013) ................................................................................. 19, 20, 21

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* v. *Ford Motor Co.,*
No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ........................................ passim

*IUE-CWA v. General Motors Corp.,*
238 F.R.D. 583 (E.D. Mich. 2006) ............................................................................. 13

*Lessard v. City of Allen Park,*
372 F. Supp. 2d 1007 (E.D. Mich. 2005) ............................................................................. 12

*Marsden v. Select Medical Corp.,*
246 F.R.D. 480 (E.D. Pa. 2007) ............................................................................. 20

*Olden v. Gardner,*
294 Fed. Appx. 210 (6th Cir. 2008) ............................................................................. 12

*Paper Systems Inc. v. Mitsubishi Corp.,*
193 F.R.D. 601 (E.D. Wisc. 2000) ............................................................................. 25

*Senter v. Gen. Motors Corp.,*
532 F.2d 511 (6th Cir. 1976) ............................................................................. 22

*Sheick v. Auto. Component Carrier LLC,*
No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ................................. passim

*Sheick v. Automotive Component Carrier LLC,*
2010 WL 3070130 (E.D.Mich. Aug. 02, 2010) ....................................................................... 22

*Sims v. Pfizer, Inc.,*
No. 1:10-CV-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ...................................... 12

*Sprague v. General Motors Corp.,*
133 F.3d 388 (6th Cir. 1998) ..................................................................................... 19, 20, 21

*Thacker v. Chesapeake Appalachia, LLC,*
259 F.R.D. 262 (E.D. Ky. 2009) ........................................................................................... 19

*UAW  v. Gen. Motors Corp.,*
497 F.3d 615 (6th Cir. 2007) ...................................................................................... 13, 17, 22

*Van Horn v. Trickey,*
840 F.2d 604 (8th Cir. 1988) ................................................................................................ 11

*Williams v. Vukovich,*
720 F.2d 909 (6th Cir. 1983) ..................................................................................... 9, 12, 14, 15

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................................................ 2
Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 2, 3
Fed. R. Civ. P. 23(a)(2) ................................................................................................... 20, 21
Fed. R. Civ. P. 23(c)(2) .......................................................................................................... 18
Fed. R. Civ. P. 23 ............................................................................................................... 1, 18
Fed. R. Civ. P. 23(a) ....................................................................................................... 19, 23
Fed. R. Civ. P. 23(a)(1) .......................................................................................................... 20
Fed. R. Civ. P. 23(a)(3) ................................................................................................... 21, 22
Fed. R. Civ. P. 23(a)(4) ................................................................................................... 22, 23
Fed. R. Civ. P. 23(b) ....................................................................................................... 19, 23
Fed. R. Civ. P. 23(b)(3) ................................................................................................... passim
Fed. R. Civ. P. 23(c)(3) .......................................................................................................... 18
Fed. R. Civ. P. 23(e) ..................................................................................................... 1, 2, 17
Fed. R. Civ. P. 23(e)(1) ............................................................................................... 11, 17, 18
Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 9
Fed. R. Civ. P. 23(g) .............................................................................................................. 22

**Other Authorities**

4 *NEWBERG ON CLASS ACTIONS,* § 18.05 ............................................................................ 21

## STATEMENT OF ISSUES PRESENTED

1.      Whether the proposed settlement between the Direct Purchaser Plaintiffs and Defendants Schaeffler Group USA Inc., Schaeffler Technologies GmbH & Co. KG (formerly Schaeffler Technologies GmbH & Co. KG), and FAG Kugelfischer GmbH (collectively, "Schaeffler" or the "Settling Defendants"), as set forth in the Settlement Agreement between the Direct Purchaser Plaintiffs and Schaeffler (attached hereto as Exhibit 1), is sufficiently fair, reasonable and adequate to justify preliminary approval and the dissemination of notice;

2.      Whether the Court should provisionally certify the Schaeffler Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the settlement;

3.      Whether the Court should authorize the dissemination of notice of the proposed settlement, and Direct Purchaser Plaintiffs' intent to seek permission from the Court to use a portion of the settlement fund to pay Direct Purchaser Plaintiffs' litigation expenses, to Settlement Class members (as defined in the Settlement Agreement) in the form and manner proposed in Direct Purchaser Plaintiffs' motion and memorandum in support; and

4.      Whether the Court should appoint Direct Purchaser Plaintiffs DALC Gear & Bearing Supply Corp., McGuire Bearing Company, and Sherman Bearings, Inc.as the Settlement Class representatives, and Interim Co-Lead Counsel for the Direct Purchasers as Co-Lead Class Counsel for the Settlement Class ("Co-Lead Settlement Class Counsel").

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
      521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
      June 20, 2016)

*Date v. Sony Electronics, Inc.*,
      No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
      No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
      218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
      248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
      No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
      No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
      527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
      722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
      No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
      No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
      133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
      137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
      497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs or Plaintiffs"), on behalf of a Settlement Class comprised of direct purchasers of Bearings in the United States, have reached a settlement with Defendants Schaeffler Group USA Inc., Schaeffler Technologies AG & Co. KG (formerly Schaeffler Technologies GmbH & Co. KG), and FAG Kugelfischer GmbH (collectively, "Schaeffler", the "Schaeffler Defendants or the "Settling Defendants").  Under the terms of the proposed settlement, the Settling Defendants will pay a total of up to $21 million and provide cooperation to assist Plaintiffs in the prosecution of the claims against the remaining Defendants.

Plaintiffs respectfully move this Court for an Order ("Preliminary Approval Order"): provisionally certifying the Settlement Class; finding that the settlement with Schaeffler is sufficiently fair, reasonable, and adequate to justify the dissemination of notice; approving the notices (attached hereto as Exhibits 2 and 3) and a plan for their dissemination; and scheduling a final fairness hearing.

The proposed Preliminary Approval Order includes the procedures necessary to obtain final approval of the proposed settlement as required by Rule 23(e) of the Federal Rules of Civil Procedure.  At this juncture, the Court need only make a preliminary determination of whether the settlement is sufficiently fair, reasonable and adequate to justify providing notice of the proposed settlement to the Settlement Class, and "lay the groundwork for a future fairness hearing."  *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, *4-5 (E.D. Mich. Aug. 2, 2010).  The Court is familiar with this process, having previously granted preliminary and final approval to settlements in a number of the cases in the *Automotive Parts Antitrust Litigation* (2:12-md-02311).

.

Plaintiffs submit that the proposed settlement satisfies the required standards and respectfully request that the Court authorize dissemination of the notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## I.   BACKGROUND

Beginning in 2012, class action lawsuits were filed against Defendants by Plaintiffs on behalf of a class of direct purchasers of automotive and industrial machinery bearings ("Bearings").  On March 19, 2012, the Court appointed the undersigned law firms Interim Co-Lead Counsel and Liaison Counsel for the Direct Purchaser Plaintiffs. (2:12-md-02311, Doc. No. 60).

On August 21, 2013, the Direct Purchaser Plaintiffs filed a Consolidated Amended Class Action Complaint (2:12-cv-00501, Doc. No. 100) alleging that Defendants entered into a conspiracy to suppress and eliminate competition for Bearings by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Bearings in violation of federal antitrust laws. Direct Purchaser Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Bearings were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and they seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

Defendants filed multiple motions to dismiss the Consolidated Amended Class Action Complaint, including a collective Rule 12(b)(6) motion, on December 2, 2013. (Case No. 2:12-md-00501, Doc. No. 106).  The two Schaeffler Defendants at that time filed separate motions on December 2, 2013: (1) Schaeffler AG's separate motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Case No. 2:12-md-00500, Doc. No. 113); and (2) Schaeffler AG and Schaeffler Group USA Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Case No. 2:12-md-00500,

Doc. No. 114).  On July 3, 2014, this Court granted Schaeffler AG's motion to dismiss for lack of personal jurisdiction.  (Case No. 2:12-md-00500, Doc. No. 149).  On August 29, 2014, this Court denied Defendants' collective Rule 12(b)(6) motion.  *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2014 WL 4272772 (E.D. Mich. Aug. 29, 2014).  On September 23, 2014, the Court denied Schaeffler USA's Rule 12(b)(6) motion.  *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2014 WL 4724883 (E.D. Mich. Sept. 23, 2014).

Thereafter, the Direct Purchaser Plaintiffs moved to amend their complaint to add new facts and new defendants.  (2:12-cv-00501, Doc. No. 132).  The Court granted the motion as to new facts but instructed the Direct Purchaser Plaintiffs to file new complaints as to the additional defendants, resulting in two new cases, Case No. 15-12068 (the "DALC Action") and Case No. 15-13932 (the "NSK Action").

Direct Purchaser Plaintiffs filed a Second Consolidated Amended Class Action Complaint on May 22, 2015 (2:12-cv-00501, Doc. No. 136), (the "Complaint"), which did not add any new parties.  Schaeffer Group USA Inc. was the only Schaeffler entity named in the Complaint.  On July 6, 2015, Schaeffler USA answered the Complaint, denying Direct Purchaser Plaintiffs' allegations of liability and damages and asserting several defenses.  (2:12-cv-00502, Doc. No. 119).

On June 29, 2015, Direct Purchaser Plaintiffs filed the DALC Action naming, among others, Schaeffler Technologies GMBH & Co. KG ("Schaeffler Technologies") and FAG Kugelfischer GMBH ("FAG Kugelfischer") as defendants.  (2:15-cv-12068, Doc. No. 9).  The DALC Action alleged that these Schaeffler entities were involved in the same global conspiracy as the Defendants in the initial case.  On December 22, 2015, Schaeffler Technologies and FAG

Keguelfischer filed a motion to dismiss for lack of personal jurisdiction.  (2:15-cv-12068, Doc. No. 75).  The Court denied this motion on March 31, 2017.  (2:15-cv-12068, Doc. No. 151).

DPPs served interrogatories, documents requests and deposition notices on Schaeffler Group USA in 2016, and the parties engaged in numerous meet and confer sessions regarding the scope and content of the requested discovery.  Schaeffler USA produced documents and transactional data, answered interrogatories, and DPPs conducted 30(b)(6) and 30(b)(1) depositions of several of Schaeffler Group USA's employees before the Settlement Agreement was signed.

## II.   TERMS OF THE SCHAEFFLER SETTLEMENT AGREEMENT

Following protracted settlement negotiations and extensive discovery, Plaintiffs reached a settlement with Schaeffler USA, Schaeffler Technologies, and FAG Kugelfischer.  The Settlement Agreement was consummated only after extensive arms-length negotiations between experienced and sophisticated counsel, which took place over extended periods of time.  During the negotiations, the merits of the respective parties' positions were thoroughly discussed and evaluated.  The parties had the benefit of substantial discovery, including the production and review of documents, written discovery, and depositions.  Thus, the proposed settlement is based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions.

The Settlement Agreement is attached hereto as Exhibit 1.  The settlement with Schaeffler is the result of extensive good faith negotiations after factual investigation, extensive discovery, and legal analysis by experienced counsel, who believe that it is fair, reasonable and adequate to the Settlement Class.  The material terms of the agreement are summarized below.

## A.     The Direct Purchaser Settlement Class

Plaintiffs and the Settling Defendants seek certification, for purposes of settlement only, of the following Schaeffler Settlement Class:

> All individuals and entities (excluding any Defendant and its present and former parents, subsidiaries, and affiliates) that purchased Bearings in the United States directly from one or more Defendant from January 1, 2000 through March 21, 2017 (the "Class Period").

Exhibit 1 at ¶ 8.

For purposes of the Settlement Class definition, the Defendants are: Schaeffler Group USA Inc.; Schaeffler Technologies GmbH & Co. KG (now Schaeffler Technologies AG & Co. KG); FAG Kugelfischer GmbH; JTEKT Corporation; Koyo Corporation of U.S.A.; Koyo France SA.; Koyo Deutschland GmbH; Nachi-Fujikoshi Corp.; Nachi America Inc.; Nachi Technology, Inc.; Nachi Europe GmbH; NSK Ltd.; NSK Americas, Inc.; NSK Europe Ltd.; NSK Corporation; AB SKF; SKF GmbH; SKF USA Inc.; NTN Corporation; NTN USA Corporation; NTN Walzlager GmbH; and NTN-SNR Roulements SA.  Exhibit 1 at ¶ 3.

## B.     The Settlement Amount

Schaeffler has agreed to pay $21 million, which amount will be deposited into an interest-bearing escrow account in accordance with the provisions of the Settlement Agreement.  Exhibit 1 at ¶¶ 22-23.  The Settlement Agreement gives Schaeffler the right to reduce the amount of the settlement, but under no circumstance to less than $16 million, or to withdraw from the settlement based on valid and timely requests for exclusion by members of the Schaeffler Settlement Class.  Exhibit 1 at ¶¶ 22, 24(c).

### C.    Releases

Section C of the Settlement Agreement provides for the release by Plaintiffs and the other members of the Settlement Class of certain claims against Schaeffler with respect to U.S. sales of Bearings directly to customers.

The release specifically excludes certain claims against Schaeffler, including claims: based upon indirect purchases of Bearings; based on negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, breach of product warranty, or similar claims relating to Bearings; brought outside of the United States relating to purchases of Bearings outside the United States; brought under laws other than those of the United States relating to purchases of Bearings outside the United States; and concerning any product other than Bearings.  Exhibit 1 at ¶ 20.

### D.    Cooperation

Schaeffler has agreed to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants by providing certain of the following types of cooperation: (a) the production of documents and data potentially relevant to Direct Purchaser Plaintiffs' claims; (b) assistance in understanding information produced to Direct Purchaser Plaintiffs and facilitating the use of such information at trial; (c) meetings between Co-Lead Settlement Class Counsel and the Settling Defendants' attorneys who will provide information relevant to the claims in this litigation; (d) witness interviews; (e) deposition testimony; (f) affidavits or declarations and (g) trial testimony.  Exhibit 1 at ¶¶ 31-43.

This is a partial settlement of the claims in the Complaint as it is with the Settling Defendants only.  Schaeffler's sales to Settlement Class members remain in the case as a potential basis for joint and several liability and damages against other current or future

Defendants in the litigation.  Exhibit 1 at ¶ 50.  Plaintiffs are continuing to prosecute the case against the remaining, non-settling, Defendants.

## III.     PROPOSED TIMETABLE

Plaintiffs propose the following schedule for final approval of the Schaeffler settlement: :

1.       Within fifteen (15) days of the date of entry of the Preliminary Approval Order, the Notice of Proposed Settlement of Direct Purchaser Class Action With Schaeffler Defendants and Hearing on Settlement Approval ("Notice") (attached as Exhibit 2) shall be mailed by first class mail, postage prepaid, to all potential members of the Settlement Class identified by Defendants, and shall be posted on the Internet at www.autopartsantitrustlitigation.com, the website dedicated to this litigation;

2.       Within twenty-five (25) days of the date of entry of the Preliminary Approval Order, the Summary Notice of Proposed Settlement of Direct Purchaser Class Action With Schaeffler Defendants and Hearing on Settlement Approval ("Summary Notice") (attached as Exhibit 3) shall be published in one national edition of *The Wall Street Journal* and in one edition of *Automotive News*;

3.       Within forty-five (45) days from the date of entry of the Preliminary Approval Order, Settlement Class Counsel shall file with the Court their motion for final approval of the Settlement Agreement and their request to utilize a portion of the settlement payment to pay litigation expenses;

4.       All requests for exclusion from the Settlement Class must be in writing, postmarked no later than sixty-five (65) days from the date of entry of the Preliminary Approval Order;

5.      All objections to the proposed settlement or to the request to utilize a portion of the settlement payment to pay litigation expenses must be postmarked no later than sixty-five (65) days from the date of the Preliminary Approval Order;

6.      At least ten (10) days before the date fixed by the Court for the Fairness Hearing, Settlement Class Counsel shall file with the Court an affidavit or declaration of the person under whose general direction the mailing and posting of the Notice and publication of the Summary Notice were made, showing that mailing, posting and publication were made in accordance with the Preliminary Approval Order; and

7.      The Fairness Hearing on final approval of the proposed settlement and the request to utilize a portion of the settlement payment to pay litigation expenses shall be scheduled at the Court's convenience on a date on or after one-hundred (100) days from the date of entry of the Preliminary Approval Order.

## IV.   THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF CLASS NOTICE

### A.    The Governing Standards.

The procedure for disseminating notice to a class and then conducting a hearing to approve a settlement is well established by courts in the Sixth Circuit and elsewhere.  Approval of a class action settlement involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement."  *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497, at 8 (E.D. Mich. June 20, 2016) (quoting *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001).  *See also Packaged Ice*, 2010 WL 3070161, at *4; *Manual For Complex Litig. (Fourth)* § 21.63 (2004).

8

"If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F. Supp. 2d 985 at 1015 (S.D. Ohio 2001) (quoting *Manual for Complex Litig. (Second)* §30.44 (1985)); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that the proposed settlement will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483, 495-96 (E.D. Mich. 2008). That determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement are assessed under the applicable final approval factors.[1] *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

In the "preliminary approval" step, the Court conducts a "limited inquiry" to determine "whether the proposed settlement has the 'potential' for final approval and to determine whether there is reason enough to notify class members and to proceed with a fairness hearing." *Packaged Ice*, 2010 WL 3070161 at *4 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)). *See also Berry v. Sch. Dist. of City of Benton Harbor,* 184 F.R.D. 93, 97 (W.D.

---

[1] In *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983), the Sixth Circuit Court set forth factors (discussed *infra*) for the district court to consider when exercising its discretion to determine if the settlement is "fair, reasonable and adequate."

Mich. 1998) ("[T]he court first must determine whether the proposed settlement is potentially approvable").   The court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Telectronics,* 137 F. Supp. 2d at 1026.

> **B.**   **The Proposed Settlement is Fair and Within the Range of Possible Approval.**

The settlement provides for a cash payment by Schaeffler in the amount of up to $21 million.   The settlement amount reflects the consideration of information resulting from extensive discovery and Settlement Class Counsel's investigation, and it constitutes a meaningful recovery.

The Schaeffler settlement is also valuable as an "ice-breaker" settlement in this multi-defendant litigation.   *In re Packaged Ice Antitrust Litig.*, No. 08-MD–1952, 2011 WL 717519 at *10 (E.D. Mich. Feb. 22, 2011).   As the court stated in *Linerboard*, "this settlement has significant value as an 'ice-breaker' settlement – it is the first settlement in the litigation – and should increase the likelihood of future settlements.   Any early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations." 292 F. Supp2d at 643.

Another important aspect of the settlement is the cooperation that Schaeffler has agreed to provide.   *See, e.g.*, *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 ("Of great importance in the Court's assessment is the provision in the Settlements requiring discovery cooperation of certain Settling Defendants.").   Cooperation is a "substantial benefit" to the class when settling with less than all defendants.   *Linerboard*, 292 F. Supp. 2d at 643.   The cooperation to be provided by the Settling Defendants under the Settlement Agreement provides just such a substantial benefit to the class.   *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *10; *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa.

10

2008) ("the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F.Supp.2d. 336, 341 (E.D.Pa.2007).

Because the proposed settlement was negotiated at arm's-length by experienced counsel knowledgeable about the facts and the law and is within the range of possible approval, Plaintiffs respectfully submit that it merits preliminary approval.

## C. Consideration of Final Approval Criteria Supports Preliminary Approval.

The Court is not required at the preliminary approval stage to determine whether it will grant final approval of the settlement. Nevertheless, initial consideration of the final approval factors supports preliminary approval of the settlement.

Fed. R. Civ. P. 23(e)(1)(C) provides that "the court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement is fair, reasonable, and adequate.'" *Packaged Ice*, 2011 WL 717519, at *8. Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van*

11

*Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988).   Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* §30.42).   This is particularly true in the case of class actions.   *Berry,* 184 F.R.D. at 97.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013).   *Accord Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016).   A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich,* 720 F.2d at 921-23); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008).   This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

Courts in the Sixth Circuit have identified a number of related factors relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged*

*Ice*, 2011 WL 717519, at *8.  *Accord Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 10;

*UAW  v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin*, 2013 WL 6511860, at

*3; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D.

Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015).  An initial review of the factors supports

preliminary approval of the Schaeffler settlement.

    **1.    The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval.**

When considering the fairness of a class action settlement, the court should assess it

"with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact

in any particular case and the concomitant risks and costs inherent in taking any litigation to

completion.'"  *Sheick,* 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238

F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul

Corp.*, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015).

Plaintiffs are optimistic about the likelihood of ultimate success in this matter against all

the Defendants, but success is not certain.  While Plaintiffs have asserted that Schaeffler was part

of a global bearings conspiracy, no Schaeffler Defendant was indicted or pled guilty in the

United States.  Schaeffler Technologies and FAG Kugelfischer paid fines to the European

Commission only based on its finding that they violated EU competition law with respect to the

sale of  bearings to automotive customers for the period between April 8, 2004 through July 25,

2011.  Schaeffler is represented by highly experienced and competent counsel.  Schaeffler has

denied Plaintiffs' allegations of liability and damages and asserted defenses, and Plaintiffs

believe that they were prepared to defend this case through trial and appeal, if necessary.

Litigation risk is inherent in any litigation, and this is particularly true with respect to class

actions.  So, while they are optimistic about the outcome of this litigation, Plaintiffs must

acknowledge the risk that Schaeffler could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

These risks must be weighed against the settlement consideration: cash payment by Schaeffler in the amount of up to $21 million, together with cooperation which is valuable to the Settlement Class members as they continue to litigate against the remaining Defendants. *See Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 12 ("cooperation strongly militates toward approval" of the settlement) (quoting *Linerboard*, 292 F. Supp. 2d 643).    Weighing the settlement's benefits against the risks of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

###     2.    The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (*quoting Vukovich,* 720 F.2d at 922).   "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523.   This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with class actions, which are "inherently complex").

Plaintiffs are still litigating with the remaining Defendants, so it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation because of the chance that those Defendants would seek to use any such disclosures against Plaintiffs going forward.   Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

The proposed settlement eliminates the risks, expense and delay with respect to a recovery from Schaeffler, ensures substantial payment to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the remaining Defendants. This factor also supports preliminary approval of the proposed settlement.

### 3.   The Judgment of Experienced Counsel Supports Approval.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser Plaintiffs from the inception of the *Automotive Parts Antitrust Litigation*, and negotiated this settlement at arm's length with well-respected and experienced counsel for Schaeffler. Settlement Class Counsel believe the proposed settlement is an excellent result.

### 4.   The Amount of Discovery Completed and the Character of the Evidence Uncovered Are Sufficient.

Substantial discovery has been completed in this litigation, including the production and review of millions of pages of documents, written discovery, proffers of information, interviews,

and numerous depositions.  Information about the alleged Bearings conspiracy also was obtained from the related criminal litigation, through Settlement Class Counsel's investigation and from the analysis of transactional data by Plaintiffs' experts.[2]  The information from these sources allowed Settlement Class Counsel to evaluate the strengths and weaknesses of the case, and also the potential value of the promised cooperation.  Based on this information, Settlement Class Counsel believe that the proposed settlement with Schaeffler is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports both preliminary (and final) approval of the settlement.

### 5.      The Reaction of Class Members

Presently, the Court cannot assess this factor.  Even if there were to be objections, their "existence… does not mean that the settlement is unfair."  *Telectronics,* 137 F. Supp. 2d at 1018. A "scarcity of objections – relative to the number of class members overall – indicates broad support for the settlement among Class Members."  *Sheick*, 2010 WL 4136958 at *22; *accord In re Cardizem,* 218 F.R.D. at 527.  Settlement Class Counsel will submit to the Court a report on objections or opt-outs, if any, after the applicable deadlines and prior to the final fairness hearing.

### 6.      The Settlement Agreement Is the Product of Arm's-Length Negotiations

Unless rebutted by evidence to the contrary, there is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,*

---

[2]  Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor.  *Packaged Ice*, 2010 WL 3070161, at *5-6.  The "question is whether the parties had adequate information about their claims."  *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)).  In this case nearly all fact discovery was completed before the agreement to settle with Schaeffler.

2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20.  Settlement Class Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they negotiated at arm's length with counsel for Schaeffler.  Consideration of this factor fully supports preliminary approval of the settlement as well.

### 7.   The Settlement Is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205).  *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.  Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlement.  *Griffin*, 2013 WL 6511860, at *5.  This factor also supports approval.

Consideration of the above factors supports preliminary approval of the proposed Schaeffler settlement.  Settlement Class Counsel respectfully submit that the proposed settlement is in the best interests of the Settlement Class and should be preliminarily approved.

## V.   THE NOTICE PROGRAM SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement.  Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).  *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013).

For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, the notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

The notice program and forms of notice proposed by Plaintiffs (*Section III*, *supra*) satisfy these requirements. The proposed Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also apprises Settlement Class members that Direct Purchaser Plaintiffs will seek permission from the Court to use a portion of the settlement funds to pay litigation expenses. The Notice will be disseminated by first class mail, postage prepaid, to all entities identified by Defendants as potential Settlement Class members. The Notice shall also be provided to all persons who request it in response to the Summary Notice. In addition, copies of the Notice shall be posted on the website dedicated to this litigation. The Summary Notice will be published in one national edition of *The Wall Street Journal* and in one edition of *Automotive News*.[3]

Plaintiffs believe that the content of and proposed method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process. *See Packaged Ice*, 2011 WL 717519, at *5. Accordingly, approval of the notice program is appropriate.

---

[3] The proposed notice program and forms of notice have been approved by the Court in connection with settlements in the *Wire Harness Litigation* (2:12-cv-00101, Doc. No. 162), in *Instrument Panel Clusters* (2:12-cv-00201, Doc. No. 91) and in *Occupant Safety Systems* (2:12-cv-00601, Doc. Nos. 97, 116).

## VI.   PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASS IS WARRANTED

It is well-established that a class may be certified for purposes of settlement.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24.  At this juncture, Plaintiffs are only seeking authorization from the Court to send notice to the Settlement Class members.  Plaintiffs will later seek final approval of a class of direct purchasers of Bearings for purposes of the settlement.  *See Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-17.  As with the preliminary approval of the settlement, Plaintiffs will address fully the factors for final certification of the proposed Settlement Class for purposes of the Schaeffler settlement only.  *See Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[4]

As demonstrated below, this action meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.   The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a).

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b).  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  Certification is appropriate under Rule 23(a) if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

---

[4] Paragraph 19 of the proposed Preliminary Approval Order provides that provisional certification of the Settlement Class will be without prejudice to the rights of any defendants to contest certification of any other class proposed in these coordinated actions.  *See Packaged Ice*, 2011 WL 717519, at *7.

and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5); *Date,* 2013 WL 3945981, at *3.

### 1.      The Settlement Class is Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  *See also Davidson v. Henkel Corp.,* 302 F.R.D. 427, 441 (E.D. Mich. 2014) (noting it is generally accepted that class of 40 or members is sufficient to satisfy the numerosity requirement).  Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members.  *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, Co-Lead Settlement Class Counsel believe there are thousands of direct purchasers of Bearings, geographically dispersed throughout the United States.  Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.      There are Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation."  *Sprague*, 133 F.3d at 397.  *Accord Barry v. Corrigan*, 2015 WL 136238, at *13 (E.D. Mich. Jan 9, 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 *NEWBERG ON CLASS ACTIONS*, § 18.05-15 (3d ed. 1992)).   Here, whether Defendants entered into an agreement to artificially fix prices of Bearings is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25.   Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on class members. *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members").   "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484.   Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.    Plaintiffs' Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague v. Gen. Motors Corp.*, 133

F.3d at 399.  Here, Plaintiffs' claims arise from the same course of conduct as the claims of the Settlement Class: the Defendants' alleged violations of the antitrust laws.  Plaintiffs and the Settlement Class are proceeding on the same legal claim and alleged violation of Section 1 of the Sherman Antitrust Act.  *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class.  "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel."  *Sheick v. Automotive Component Carrier LLC,* 2010 WL 3070130, at *3 (E.D.Mich. Aug. 02, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here.  The interests of the proposed representatives of the Settlement Class, DALC Gear & Bearing Supply Corp., McGuire Bearing Company, and Sherman Bearings Inc. are the same as those of other Settlement Class members.  Plaintiffs are direct purchasers of Bearings from a Defendant in the United States.  Plaintiffs and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy, and seek to prove that Defendants violated the antitrust laws.  Plaintiffs' interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[5]  Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Class in

---

[5] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class.  The Court

the settlement negotiations with Schaeffler and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

### B.     Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes

In addition to satisfying Rule 23(a), Plaintiffs must show that the class falls under at least one of the three subsections of Rule 23(b).  Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1.     Common Legal and Factual Questions Predominate

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification."  *Amchem*, 521 U.S. at 623.   The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question.  *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *Scrap Metal*, 527 F.3d at 535;

---

previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman Kodroff & Willis, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases.  They submit that, for the same reasons that the Court appointed them to that position, their appointment as Co-Lead Settlement Class Counsel is appropriate.

*Packaged Ice*, 2011 WL 717519, at 6; *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010).  Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members' . . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."  527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the Settlement Class.  As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Bearings is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation.  Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects.  *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6.  If Plaintiffs and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.  Therefore, common proof of Defendants' violations of antitrust law will predominate.

**2.    A Class Action is Superior to Other Methods of Adjudication**

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication:  (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Bearings litigation has been centralized in this Court.  If a Settlement Class member wants to control its own litigation, it can request exclusion from the Settlement Class.  Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Supreme Court explained that when a court is asked to certify a settlement only class it need not consider the difficulties in managing a trial of the case because the idea is that the settlement will end the litigation without a trial.  *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not comprised of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)).  Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class.  *E.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury.").  The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 527 (S.D.N.Y 1996).  Thus, class litigation is superior to the alternatives in this case.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary

approval of the settlement, provisionally certify the Settlement Class, authorize dissemination of

Notice, and schedule a Fairness Hearing on the Schaeffler settlement.

DATED: June 14, 2017                        Respectfully submitted,


                                             /s/David H. Fink
                                            David H. Fink (P28235)
                                            Darryl Bressack (P67820)
                                            Nathan J. Fink (P75185)

                                            FINK + ASSOCIATES LAW
                                            38500 Woodward Ave; Suite 350
                                            Bloomfield Hills, MI 48304
                                            Telephone: (248) 971-2500

                                            *Interim Liaison Counsel for the Direct
                                            Purchaser Plaintiffs*

Steven A. Kanner                            Joseph C. Kohn
William H. London                          William E. Hoese
Michael E. Moskovitz                       Douglas A. Abrahams
FREED KANNER LONDON                        KOHN, SWIFT & GRAF, P.C.
   & MILLEN LLC                            One South Broad Street, Suite 2100
2201 Waukegan Road, Suite 130              Philadelphia, PA  19107
Bannockburn, IL  60015                     Telephone: (215) 238-1700
Telephone: (224) 632-4500


Gregory P. Hansel                          Eugene A. Spector
Randall B. Weill                           William G. Caldes
Michael S. Smith                           Jonathan M. Jagher
PRETI, FLAHERTY, BELIVEAU                   Jeffrey L. Spector
   & PACHIOS LLP                           SPECTOR ROSEMAN & KODROFF
One City Center, P.O. Box 9546             1818 Market Street, Suite 2500
Portland, ME  04112-9546                   Philadelphia, PA  19103
Telephone: (207) 791-3000                  Telephone: (215) 496-0300


*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

M. John Dominguez
COHEN, MILSTEIN SELLERS
& TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1431

Solomon B. Cera
Thomas C. Bright
Pamela A. Markert
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230

*Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2017, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system which will send notification of such filing to all counsel

of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkandassociateslaw.com

28