# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| | : | |
| **In Re:  AUTOMOTIVE PARTS** | : | **Case No. 12-md-02311** |
| **ANTITRUST LITIGATION** | : | **Honorable Marianne O. Battani** |
| | : | |
| | : | |
| **In Re: BEARINGS CASES** | : | |
| | : | |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | **2:12-cv-00501-MOB-MKM** |
| **ALL DIRECT PURCHASER ACTIONS** | : | **2:15-cv-12068- MOB-MKM** |
| | : | |

## DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH SCHAEFFLER DEFENDANTS AND FOR AUTHORIZATION TO USE PART OF THE SETTLEMENT FUND TO PAY FOR LITIGATION EXPENSES

Direct Purchaser Plaintiffs hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement with Defendants Schaeffler Group USA Inc., Schaeffler Technologies AG & Co. KG (formerly Schaeffler Technologies GmbH & Co. KG), and FAG Kugelfischer GmbH (collectively, "Schaeffler"), and for authorization to use up to 20% of the settlement proceeds for Plaintiffs' litigation expenses. In support of this motion, Plaintiffs rely upon the accompanying brief, which is incorporated by reference herein.  Schaeffler consents to this motion.

DATED: September 11, 2017

Respectfully submitted,

  /s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK + ASSOCIATES LAW
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Solomon B. Cera
Thomas C. Bright
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230

Manuel J. Dominguez
Cohen Milstein Sellers & Toll PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (877) 515-7955

*Direct Purchaser Plaintiffs' Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In Re: AUTOMOTIVE PARTS | : | Case No. 12-md-02311 |
| ANTITRUST LITIGATION | : | Honorable Marianne O. Battani |
| | : | |
| | : | |
| In Re: BEARINGS CASES | : | |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | 2:12-cv-00501-MOB-MKM |
| ALL DIRECT PURCHASER ACTIONS | : | 2:15-cv-12068- MOB-MKM |
| | : | |

**BRIEF IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH**
**SCHAEFFLER DEFENDANTS AND FOR AUTHORIZATION TO USE PART**
**OF THE SETTLEMENT FUND TO PAY FOR LITIGATION EXPENSES**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... iii

STATEMENT OF ISSUES PRESENTED.............................................................. vii

INTRODUCTION .................................................................................................... 1

I.      BACKGROUND ............................................................................................. 1

II.     TERMS OF THE SETTLEMENT AGREEMENT ...................................... 5

III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT .......................................................... 7

       A.    The Governing Standards for Final Approval. ....................................... 7

       B.    The Proposed Settlement is Fair, Reasonable, and Adequate............... 9

            1.    The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval. ................................................................................. 10

            2.    The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval. ................................................................ 13

            3.    The Judgment of Experienced Counsel Supports Approval. ........ 13

            4.    The Amount of Discovery Completed Is Sufficient. .................... 14

            5.    The Reaction of Class Members. ................................................... 15

            6.    The Settlement is the Product of Arm's-Length Negotiations........ 15

            7.    The Settlement is Consistent with the Public Interest. ............... 15

IV.   NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS .................................................................................................... 16

V.    ALLOWING SETTLEMENT CLASS COUNSEL TO USE UP TO 20% OF THE SETTLEMENT PROCEEDS FOR LITIGATION EXPENSES IS APPROPRIATE ..... 17

VI.   CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE................................................................................................. 19

       A.    The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a). ............... 20

            1.    The Settlement Class is Sufficiently Numerous ...................................... 20

            2.    There are Common Questions of Law and Fact. ..................................... 21

            3.    Plaintiffs' Claims are Typical of Those of the Settlement Class. ............ 22

            4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. . 22

       B.    Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes. ............................................................................................... 23

            1.    Common Legal and Factual Questions Predominate.............................. 24

i

2.     A Class Action is Superior to Other Methods of Adjudication. ............... 25

VII.    CONCLUSION ................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................. 19, 23, 25

*Automotive Parts Antitrust Litig.,* 12-MD-02311,
    2014 WL 4272772 (E.D. Mich. Aug. 29, 2014)........................................................ 2

*Automotive Parts Antitrust Litig.,* 12-MD-02311,
    2014 WL 4724883 (E.D. Mich. Sept. 23, 2014)...................................................... 2

*Barry v. Corrigan,*
    79 F. Supp 3d 712 (E.D. Mich. 2015)............................................................. 20, 22

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) ........................................................................... 24

*Berry v. Sch. Dist. of City of Benton Harbor,*
    *184* F.R.D. 93 (W.D. Mich. 1998) ..................................................................... 9

*Carson v. Am. Brands, Inc.,*
    *450* U.S. 79 (1981).......................................................................................... 9

*Date* v. Sony Electronics, Inc.,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013).................... 14, 20, 22

*Davidson v. Henkel Corp.,*
    302 F.R.D. 427 (E.D. Mich. 2014) ................................................................... 20

*Dick v. Sprint Commc'ns,*
    297 F.R.D. 283 (W.D. Ky. 2014)................................................................... 6, 8

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
    No. 10-cv-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ......................... 21

*Ford v. Fed.-Mogul Corp.,*
    *No.* 2:09-CV-14448, 2015 WL 110340 (E.D. Mich. Jan. 7, 2015)...................... 10, 13

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975)............................................................................. 8

*Granada Invs., Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir.1992) ...................................................................... 10, 15

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013).............. passim

*Hoving v. Lawyers Title Ins. Co.,*
    256 F.R.D. 555 (E.D. Mich. 2009) ................................................................... 23

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) .......................................................................... 21

*In re Auto. Refinishing Paint Antitrust Litig.,*
    617 F. Supp.2d 336 (E.D. Pa. 2007) .................................................................. 6

*In re Automotive Refinishing Paint Antitrust Litig.,*
    MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ............................... 8

*In re Cardizem CD Antitrust Litig,*
    200 F.R.D. 297 (E.D. Mich. 2007) ................................................................... 25

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) .............................................................. passim

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 326 (E.D. Mich. 2001) ................................................................. 25

*In re Chocolate Confectionary Antitrust Litig.*,
   No. 1:08–MDL–1935, 2011 WL 6981200 (M.D. Pa. Dec. 12, 2011) .................................... 18

*In re Corrugated Container Antitrust Litig.*,
   556 F. Supp. 1117 (S.D. Tex. 1982) ................................................................ 18

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08–MD01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ...................................... 6

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................ 13

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D 472 (W.D. Pa. 1999) .................................................................. 21

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012) .................................................................. 26

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y.2004) .................................................................. 14

*In re Insurance Brokerage Antitrust Litig.*,
   297 F.R.D. 136 .................................................................................. 16

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .......................................................... 5, 12, 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y 1996) .................................................................. 26

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ...................................... 14

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ...................................... 10

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   584 F. Supp. 2d 697 (M.D. Pa. 2008) ............................................................ 18

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) ................................................................. 23, 24

*In re Southeastern Milk Antitrust Litig.*, 2:07- CV-208,
   2013 WL 2155379 (E.D. Tenn. May17, 2013).......................................................... 6

*In re Southeastern Milk Antitrust Litig.*,
   No. 2:07-CV-208, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010)........................................ 24

*In re Telectronics Pacing Sys. Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ......................................................... 9, 13, 15

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ............................................................... 19, 20, 22

*In re: Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ................................. passim

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
   No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)..................................... passim

*IUE-CWA v. General Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ............................................................ 8, 10, 11

*Lessard v. City of Allen Park*,
   372 F. Supp. 2d 1007 (E.D. Mich. 2005)............................................................. 7

*Marsden v. Select Medical Corp.,*
   246 F.R.D. 480 (E.D. Pa. 2007).................................................................................. 20
*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,*
   234 F.R.D. 627 (W.D. Ky. 2006).................................................................................. 8
*Newby v. Enron Corp.,*
   394 F.3d 296 (5th Cir. 2004) ...................................................................................... 18
*Olden v. Gardner,*
   294 Fed. Appx. 210 (6th Cir. 2008)............................................................................ 7
*Paper Systems Inc. v. Mitsubishi Corp.,*
   193 F.R.D. 601 (E.D. Wisc. 2000)............................................................................... 25
*Senter v. Gen. Motors Corp.,*
   532 F.2d 511 (6th Cir. 1976) ...................................................................................... 22
*Sheick v. Auto. Component Carrier LLC,*
   No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010).................................... passim
*Sheick v. Automotive Component Carrier LLC,*
   No. 09–14429, 2010 WL 3070130 (E.D. Mich. Aug. 02, 2010) ..................................... 22
*Sims v. Pfizer, Inc.,*
   No. 1:10-CV-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016).................................. 7
*Sprague v. General Motors Corp.,*
   133 F.3d 388 (6th Cir. 1998) ............................................................................. 19, 20, 22
*Sullivan v. DB Investments, Inc.,*
   667 F.3d 273 (3d Cir. 2011)........................................................................................ 9
*Thacker v. Chesapeake Appalachia, LLC,*
   259 F.R.D. 262 (E.D. Ky. 2009).................................................................................. 19
*UAW v. General Motors Corp.,*
   497 F.3d 615 (6th Cir. 2007) ...................................................................................... passim
*Van Horn v. Trickey,*
   840 F.2d 604 (8th Cir. 1988) ...................................................................................... 9
*Williams v. Vukovich,*
   720 F.2d 909 (6th Cir. 1983) ............................................................................. 7, 13, 14
*WorldCom, Inc. Sec. Litig.,* 02 CIV 3288(DLC),
   2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)............................................................... 18

**Statutes**

28 U.S.C. § 1715.......................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(2)............................................................................................... 2
Fed. R. Civ. P. 12(b)(6)............................................................................................... 2
Fed. R. Civ. P. 23....................................................................................................... 17, 19
Fed. R. Civ. P. 23(a).................................................................................................. 19, 20, 23
Fed. R. Civ. P. 23(a)(1).............................................................................................. 20
Fed. R. Civ. P. 23(a)(2).............................................................................................. 20, 21
Fed. R. Civ. P. 23(a)(3).............................................................................................. 21, 22
Fed. R. Civ. P. 23(a)(4).............................................................................................. 22, 23

Fed. R. Civ. P. 23(b) ............................................................................................. 19, 23
Fed. R. Civ. P. 23(b)(3) ............................................................................. 16, 19, 23, 25
Fed. R. Civ. P. 23(c)(2) ..................................................................................................... 16
Fed. R. Civ. P. 23(c)(3) ..................................................................................................... 16
Fed. R. Civ. P. 23(e)(1) ..................................................................................................... 16
Fed. R. Civ. P. 23(e)(2) ................................................................................................. 9, 10
Fed. R. Civ. P. 23(g) .......................................................................................................... 23

**Other Authorities**

4 *NEWBERG ON CLASS ACTIONS,* § 18.05 ........................................................... 21
*Manual for Complex Litigation, Fourth* §13.21 (2004) ........................................... 17

**STATEMENT OF ISSUES PRESENTED**

1.      Whether the proposed settlement between the Direct Purchaser Plaintiffs and Defendants Schaeffler Group USA Inc., Schaeffler Technologies GmbH & Co. KG (formerly Schaeffler Technologies GmbH & Co. KG), and FAG Kugelfischer GmbH (collectively, "Schaeffler" or the "Schaeffler Defendants"), as set forth in the Settlement Agreement between the Direct Purchaser Plaintiffs and Schaeffler, is fair, reasonable and adequate, and whether the Court should approve the settlement under Fed. R. Civ. P. 23.

2.      Whether the Court should certify the Schaeffler Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the settlement only.

3.      Whether the Court should approve Settlement Class Counsel's request to use up to 20% of the Schaeffler Settlement Fund to pay Plaintiffs' litigation expenses.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
    June 20, 2016)

*Date v. Sony Electronics, Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Plaintiffs, on behalf of a Settlement Class comprised of direct purchasers of Bearings in the United States, have reached a settlement with the Schaeffler Defendants.  Under the terms of the proposed settlement, Schaeffler will pay a total of up to $21 million[1] and provide cooperation to assist Plaintiffs in the prosecution of their claims against the remaining Defendants.

For the reasons set forth herein, Direct Purchaser Plaintiffs respectfully submit that the proposed settlement is fair, reasonable and adequate, and should be approved by the Court. Settlement Class Counsel also request that the Court approve their request to use up to 20% of the settlement proceeds for Plaintiffs' litigation expenses.  Submitted herewith is a proposed Orders and Final Judgment agreed to by Direct Purchaser Plaintiffs and Schaeffler, and a proposed order granting the litigation expense request.

## I.      BACKGROUND

Beginning in 2012, class action lawsuits were filed against Defendants by Plaintiffs on behalf of a class of direct purchasers of automotive and industrial machinery bearings ("Bearings")[2].  On March 19, 2012, the Court appointed the undersigned law firms Interim Co-Lead Counsel and Liaison Counsel for the Direct Purchaser Plaintiffs. (2:12-md-02311, Doc. No. 60).

---

[1] As discussed in Section II of this Memorandum, and in the Notice of Proposed Settlement of Direct Purchaser Class Action with Schaeffler Defendants and Hearing on Settlement Approval ("Notice") (attached as Exhibit 1), the settlement amount is subject to reduction, and/or to rescission, based on valid and timely requests for exclusion by members of the Schaeffler Settlement Class in accordance with the terms set forth in a confidential letter between Schaeffler and the Settlement Class.  The confidential letter will be provided to the Court for *in camera* review upon its request.

[2] Bearings are friction-reducing devices that allow one moving part to glide past another moving part.

On August 21, 2013, the Direct Purchaser Plaintiffs filed a Consolidated Amended Class Action Complaint (2:12-cv-00501, Doc. No. 100) alleging that Defendants entered into a conspiracy to suppress and eliminate competition for Bearings by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Bearings in violation of federal antitrust laws. Direct Purchaser Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Bearings were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and they seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

Defendants filed multiple motions to dismiss the Consolidated Amended Class Action Complaint, including a collective Rule 12(b)(6) motion, on December 2, 2013. (2:12-cv-00501, Doc. No. 106). The two Schaeffler Defendants at that time filed separate motions on December 2, 2013: (1) Schaeffler AG's separate motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (2:12-cv-00500, Doc. No. 113); and (2) Schaeffler AG and Schaeffler Group USA Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (2:12-cv-00500, Doc. No. 114). On July 3, 2014, this Court granted Schaeffler AG's motion to dismiss for lack of personal jurisdiction. (2:12-cv-00500, Doc. No. 149). On August 29, 2014, this Court denied Defendants' collective Rule 12(b)(6) motion. *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2014 WL 4272772 (E.D. Mich. Aug. 29, 2014). On September 23, 2014, the Court denied Schaeffler USA's Rule 12(b)(6) motion. *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2014 WL 4724883 (E.D. Mich. Sept. 23, 2014).

Thereafter, the Direct Purchaser Plaintiffs moved to amend their complaint to add new facts and new defendants. (2:12-cv-00501, Doc. No. 132). The Court granted the motion as to new facts but instructed the Direct Purchaser Plaintiffs to file new complaints as to the additional

defendants, resulting in two new cases, Case No. 15-12068 (the "DALC Action") and Case No. 15-13932 (the "NSK Action").

Direct Purchaser Plaintiffs filed a Second Consolidated Amended Class Action Complaint on May 22, 2015 (2:12-cv-00501, Doc. No. 136), (the "Complaint"), which did not add any new parties. Schaeffler Group USA Inc. was the only Schaeffler entity named in the Complaint. On July 6, 2015, Schaeffler USA answered the Complaint, denying Direct Purchaser Plaintiffs' allegations of liability and damages and asserting several defenses. (2:12-cv-00502, Doc. No. 119).

On June 29, 2015, Direct Purchaser Plaintiffs filed the DALC Action naming, among others, Schaeffler Technologies GMBH & Co. KG ("Schaeffler Technologies") and FAG Kugelfischer GMBH ("FAG Kugelfischer") as defendants. (2:15-cv-12068, Doc. No. 9). The DALC Action alleged that these Schaeffler entities were involved in the same global conspiracy as the Defendants in the initial case. On December 22, 2015, Schaeffler Technologies and FAG Keguelfischer filed a motion to dismiss for lack of personal jurisdiction. (2:15-cv-12068, Doc. No. 75). The Court denied this motion on March 31, 2017. (2:15-cv-12068, Doc. No. 151).

Direct Purchaser Plaintiffs served interrogatories, documents requests and deposition notices on Schaeffler Group USA in 2016, and the parties engaged in numerous meet and confer sessions regarding the scope and content of the requested discovery. Schaeffler USA produced documents and transactional data, answered interrogatories, and Direct Purchaser Plaintiffs conducted 30(b)(6) and 30(b)(1) depositions of several of Schaeffler Group USA's employees before the Settlement Agreement was signed.

Following protracted settlement negotiations, Direct Purchaser Plaintiffs reached a settlement with the Schaeffler Defendants, which is memorialized in an agreement dated March 21, 2017.  (2:12-cv-00501, Doc. No. 238-1).

On July 26, 2017, the Court preliminarily approved the Schaeffler settlement and authorized dissemination of notice to the Schaeffler Settlement Class (2:12-cv-00501, Doc. No. 240) (the "Notice Dissemination Order"), which the Court provisionally certified for purposes of the proposed settlement, and defined as follows:

> All individuals and entities (excluding any Defendant and its present and former parents, subsidiaries, and affiliates) that purchased Bearings in the United States directly from one or more Defendant from January 1, 2000 through March 21, 2017.

Doc. No. 240 at ¶ 4.[3]

Pursuant to the Notice Dissemination Order, on August 10, 2017, 48,162 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants.  A Summary Notice of Proposed Settlement of Direct Purchaser Class Action with Schaeffler Defendants and Hearing on Settlement Approval (the "Summary Notice") was published in the national edition of *The Wall Street Journal* and in *Automotive News* on August 21, 2017.   In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[4]

---

[3] For purposes of the Settlement Class definition, the Defendants are: Schaeffler Group USA Inc.; Schaeffler Technologies GmbH & Co. KG (now Schaeffler Technologies AG & Co. KG); FAG Kugelfischer GmbH; JTEKT Corporation; Koyo Corporation of U.S.A.; Koyo France SA.; Koyo Deutschland GmbH; Nachi-Fujikoshi Corp.; Nachi America Inc.; Nachi Technology, Inc.; Nachi Europe GmbH; NSK Ltd.; NSK Americas, Inc.; NSK Europe Ltd.; NSK Corporation; AB SKF; SKF GmbH; SKF USA Inc.; NTN Corporation; NTN USA Corporation; NTN Walzlager GmbH; and NTN-SNR Roulements SA.  (Doc. No. 240 at ¶ 4).

[4] Counsel for the Schaeffler Defendants have informed Settlement Class Counsel that Schaeffler fulfilled its obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of

The deadline for submission of objections to the proposed settlement, and for requests for exclusion from the Settlement Class, is October 2, 2017.

## II.    TERMS OF THE SETTLEMENT AGREEMENT

Plaintiffs, on behalf of the Schaeffler Settlement Class, have entered into a settlement with Schaeffler dated March 21, 2017 under which Schaeffler has agreed to pay $21 million (2:12-cv-00501, Doc. No. 238-1).   The Settlement Agreement gives Schaeffler the right to reduce the amount of the settlement, but under no circumstance to less than $16 million, or to withdraw from the settlement based on valid and timely requests for exclusion by members of the Schaeffler Settlement Class.

In addition to the cash payment, the proposed settlement requires Schaeffler to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants by providing the following types of cooperation: (a) the production of documents and data potentially relevant to Direct Purchaser Plaintiffs' claims; (b) assistance in understanding information produced to Direct Purchaser Plaintiffs and facilitating the use of such information at trial; (c) meetings between Co-Lead Settlement Class Counsel and Schaeffler's attorneys who will provide information relevant to the claims in this litigation; (d) witness interviews; (e) deposition testimony; (f) affidavits or declarations and (g) trial testimony.   (Doc. No. 238-1 at ¶¶ 31-43). As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militate[] toward approval of the Settlement Agreement."   This cooperation will enhance and strengthen Direct Purchaser Plaintiffs' prosecution of their claims against the remaining Defendants.

---

2005") ("CAFA"), by disseminating the requisite CAFA notice to the appropriate federal and state officials on June 22, 2017.

In exchange for the settlement payment and cooperation, the proposed settlement provides, *inter alia,* for the release by Direct Purchaser Plaintiffs and other members of the Settlement Class of "Released Claims" against Schaeffler and other "Releasees" (as defined in the Settlement Agreements). The Released Claims are antitrust and similar claims arising from the conduct alleged in the Complaint. The release specifically excludes certain claims against Schaeffler, including claims: based upon indirect purchases of Bearings; based on negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, breach of product warranty, or similar claims relating to Bearings; brought outside of the United States relating to purchases of Bearings outside the United States; brought under laws other than those of the United States relating to purchases of Bearings outside the United States; and concerning any product other than Bearings. (Doc. No. 238-1 at ¶ 20).

Moreover, Schaeffler's sales to Settlement Class members remain in the case as a potential basis for joint and several liability and damages against other current or future Defendants in the litigation. (Doc. No. 238-1 at ¶ 50). Plaintiffs are continuing to prosecute the case against the remaining, non-settling, Defendants.

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp.2d 336, 341 (E.D. Pa. 2007).

6

The Settlement Agreement was consummated only after extensive arms-length negotiations between experienced and sophisticated counsel, which took place over extended periods of time.  During the negotiations, the merits of the respective parties' positions were thoroughly discussed and evaluated.  The parties had the benefit of substantial discovery, including the production and review of documents, written discovery, and depositions.  The proposed settlement is thus based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions.

Accordingly, Plaintiffs believe that the proposed settlement is fair, reasonable and adequate to the Settlement Class.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A. The Governing Standards for Final Approval.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits."  *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013).  *Accord UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions); *Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016).

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest."  *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing  *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are

better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick*, 297 F.R.D. at 297 ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation."). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *accord In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). In light of the uncertainties and risks inherent in any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick,* 2010 WL 4136958, at *15 (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric.*

8

*Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

Because the proposed Schaeffler settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, and is fair, reasonable, and adequate, Direct Purchaser Plaintiffs respectfully submit that it merits final approval.

### B.     The Proposed Settlement is Fair, Reasonable, and Adequate.

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011).  Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981).  There are two reasons for this.  First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988).   Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001) (citing *Manual (Third)* §30.42).   This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Courts in the Sixth Circuit have identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel

9

and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8. *Accord Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 10; *UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin*, 2013 WL 6511860, at *3; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015). No single factor is dispositive. When evaluating the fairness of a settlement, the court may weigh each factor based on the circumstances of the case, *Ford*, 2006 WL 1984363, at *21, and may "choose to consider only those factors that are relevant to the settlement at hand. *Id.* at *22. *See also Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir.1992) (district court enjoys wide discretion in assessing the weight and applicability of factors). As discussed more fully below, the Schaeffler settlement is fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

> **1.     The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval.**

When considering the fairness of a class action settlement, a court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick,* 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015).

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. In assessing the parties' dispute and weighing the likelihood of plaintiffs' success on the merits if the litigation continues against the benefits of the

settlement, the ultimate question for the court is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick,* 2010 WL 4136958, at \*16 (citing *IUE–CWA*, 238 F.R.D. at 595).

The settlement provides an excellent result for the Settlement Class in light of the substantial risks of continuing litigation. In negotiating the settlement, Settlement Class Counsel took into account the evidence supporting Direct Purchaser Plaintiffs' claims, the dollar volume of Schaeffler's Bearings sales, the defenses that Schaeffler raised or was expected to raise, and the substantial value provided by Schaeffler's agreement to cooperate with Direct Purchaser Plaintiffs in the continued prosecution of their claims against the remaining Defendants.

Plaintiffs are optimistic about the likelihood of ultimate success in this matter against all the Defendants, but success is not certain. As this Court has observed, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice, which is not required to prove class-wide impact or damages, undertakings that require complex, risky and expensive expert analyses. *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11.

While Plaintiffs have asserted that Schaeffler was part of a global bearings conspiracy, no Schaeffler Defendant was indicted or pled guilty in the United States. Schaeffler Technologies and FAG Kugelfischer paid fines to the European Commission only based on its finding that they violated EU competition law with respect to the sale of Bearings to automotive customers for the period between April 8, 2004 through July 25, 2011.

Schaeffler is represented by highly experienced and competent counsel. Schaeffler has denied Plaintiffs' allegations of liability and damages and asserted defenses, and Plaintiffs believe that they were prepared to defend this case through trial and appeal, if necessary.

Litigation risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while they are optimistic about the outcome of this litigation, Plaintiffs must acknowledge the risk that Schaeffler could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

These risks must be weighed against the settlement consideration: up to $21million in cash, together with cooperation by Schaeffler, which is valuable to the Settlement Class members as they continue to litigate against the remaining Defendants. *See, e.g.*, *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 ("Of great importance in the Court's assessment is the provision in the Settlements requiring discovery cooperation of certain Settling Defendants."). Cooperation is a "substantial benefit" to the class when settling with less than all defendants. *Linerboard*, 292 F. Supp. 2d at 643. The cooperation to be provided by Schaeffler under the Settlement Agreement provides just such a substantial benefit to the class. *In re Packaged Ice Antitrust Litig.,* No. 08-MD–1952, 2011 WL 717519 at *10 (E.D. Mich. Feb. 22, 2011).

The Schaeffler settlement is also valuable as an "ice-breaker" settlement in this multi-defendant litigation. *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519 at *10. As the court stated in *Linerboard*, "this settlement has significant value as an 'ice-breaker' settlement – it is the first settlement in the litigation – and should increase the likelihood of future settlements. Any early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations." 292 F. Supp2d at 643.

Settlement Class Counsel believe that the settlement is an excellent result. Weighing the settlement's benefits against the risks of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

12

2.     **The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.**

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (*quoting Vukovich*, 720 F.2d at 922. "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

Plaintiffs are still litigating with the remaining Defendants, so it would be imprudent to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation because the remaining Defendants could then use such disclosures against Plaintiffs going forward. Settlement Class Counsel believe it is sufficient at this point to state that complex antitrust litigation of this scope has inherent risks that the settlement at least partially negates.

The proposed settlement eliminates the risks, expense, and delay that would otherwise exist with respect to a recovery from Schaeffler, ensures substantial payments to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the remaining Defendants. This factor also supports final approval of the proposed settlement.

3.     **The Judgment of Experienced Counsel Supports Approval.**

In deciding whether to approve a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL

13

717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9.  "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'"  *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23.

Settlement Class Counsel and additional counsel with whom they have been working on this matter have extensive experience in handling class action antitrust and other complex litigation.  They have represented the Direct Purchaser Plaintiffs from the inception of this *Automotive Parts Antitrust Litigation* case, and negotiated this settlement at arm's length with well-respected and experienced counsel for Schaeffler.  Settlement Class Counsel believe the proposed settlement is an excellent result.

### 4.   The Amount of Discovery Completed Is Sufficient.

Substantial discovery has been completed in this litigation, including the production and review of millions of pages of documents, written discovery, proffers of information, interviews, and numerous depositions.  Information about the alleged Bearings conspiracy also was obtained from the related criminal litigation, through Settlement Class Counsel's investigation, and from the analysis of transactional data by Plaintiffs' experts.[5]   The information from these sources allowed Settlement Class Counsel to evaluate the strengths and weaknesses of the legal case, and also the potential value of the promised cooperation.  Based on this information, Settlement

---

[5] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor.  *Packaged Ice*, 2010 WL 3070161, at *5-6.  The "question is whether the parties had adequate information about their claims."  *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)).  In this case nearly all fact discovery was completed before the agreement to settle with Schaeffler.

Class Counsel believe that the proposed settlement with Schaeffler is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports final approval.

### 5.       The Reaction of Class Members.

The Court cannot yet assess this factor.  But even if there were to be some objections, their "existence… does not mean that the settlement is unfair." *Telectronics,* 137 F. Supp. 2d at 1018.  A "scarcity of objections – relative to the number of class members overall – indicates broad support for the settlement among Class Members."  *Sheick*, 2010 WL 4136958 at *22; *accord In re Cardizem,* 218 F.R.D. at 527.  Settlement Class Counsel will submit to the Court a report on objections or opt-outs, if any, after the October 2, 2017 deadlines, and prior to the Fairness Hearing, which is scheduled for November 8, 2017.

### 6.       The Settlement is the Product of Arm's-Length Negotiations.

Unless rebutted by evidence to the contrary, there is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20.  Settlement Class Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they and additional plaintiffs' counsel with whom they are working closely and cooperatively negotiated at arm's length with counsel for Schaeffler.  Consideration of this factor fully supports final approval of the settlement as well.

### 7.       The Settlement is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at

1205).  *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.

Plaintiffs submit that there is no countervailing public interest that provides a reason to

disapprove the proposed settlement.  *Griffin*, 2013 WL 6511860, at *5.  This factor also supports

approval.

Consideration of the above factors supports final approval of the proposed Schaeffler

settlement.  Settlement Class Counsel respectfully submit that the proposed settlement is in the

best interests of the Settlement Class and should be approved.

## IV. NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a

"reasonable manner" to all class members who would be bound by a proposed settlement.  Rule

23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of

the pendency of the settlement proposed and to afford them an opportunity to present their

objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339

U.S. 306, 314 (1950)).  *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151

(E.D. Pa. 2013).

For class actions certified under Rule 23(b)(3), the court must also "direct to class

members the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition;

(3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through

counsel; (5) that the court will exclude from the class any member who requests exclusion; (6)

the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on

class members under Rule 23(c)(3).  *Id.*

16

The notice program and forms of notice utilized by Plaintiffs satisfy these requirements.[6] The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also apprises Settlement Class members that Direct Purchaser Plaintiffs will seek permission from the Court to use a portion of the settlement funds to pay litigation expenses.

Pursuant to the Notice Dissemination Order, on August 10, 2017, 48,162 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants.  The Summary Notice was published in the national edition of *The Wall Street Journal* and in *Automotive News* on August 21, 2017.  In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[7]

The content and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process.  *See Packaged Ice*, 2011 WL 717519, at *5.

## V.   ALLOWING SETTLEMENT CLASS COUNSEL TO USE UP TO 20% OF THE SETTLEMENT PROCEEDS FOR LITIGATION EXPENSES IS APPROPRIATE

In view of the ongoing litigation against the remaining Defendants, Settlement Class Counsel request that they be permitted to use a portion of the Schaeffler settlement proceeds to pay Plaintiffs' expenses in the Bearings litigation.

The Notice expressly informs members of the Settlement Class that counsel will request that they be permitted to use up to 20% of the Schaeffler settlement proceeds to pay Plaintiffs'

---

[6] The proposed notice program and forms of notice have been approved by the Court in connection with settlements in the *Wire Harness Litigation* (2:12-cv-00101, Doc. Nos. 162, 320, 474), in *Instrument Panel Clusters* (2:12-cv-00201, Doc. No. 91) and in *Occupant Safety Systems* (2:12-cv-00601, Doc. Nos. 97, 116).

[7] Consistent with paragraph 16 of the Notice Dissemination Order, a Declaration or Affidavit confirming that notice to the Settlement Class was disseminated in accordance with the Order will be filed at least 10 days prior to the Fairness Hearing.

litigation expenses, including costs for experts, depositions, document reproduction and review, and other costs incurred in prosecuting this case.  Notice, Exhibit 1, at 3.

Neither Settlement Class Counsel's request, nor the granting of such a request, is unusual. Indeed, the *Manual for Complex Litigation, Fourth* §13.21 (2004), provides that "partial settlements may provide funds needed to pursue the litigation…."  *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *13-14 (approving class counsel's request to use proceeds from early settlement to pay litigation expenses); *Linerboard,* 292 F. Supp. 2d at 643 (noting that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *In re Corrugated Container Antitrust Litig.,* 556 F. Supp. 1117, 1146 (S.D. Tex. 1982) ("the nonrefundable amount of $187,500 made available to plaintiffs by this settlement provided a substantial sum to help defray plaintiffs' expenses at a time when their trial preparation costs were mounting rapidly").

Numerous other courts have granted requests to use a portion of settlement proceeds for the continued prosecution of litigation.  For example, in *Newby v. Enron Corp.,* 394 F.3d 296, 302-03 (5th Cir. 2004), the Fifth Circuit affirmed an order providing for the establishment of a $15 million litigation expense fund from the proceeds of a partial settlement.  In *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08–MDL–1935, 2011 WL 6981200, at *3 (M.D. Pa. Dec. 12, 2011), the court authorized plaintiffs to utilize the settlement fund to pay "such expenses as may reasonably be incurred in the prosecution of the Class Action."  In *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008), the court approved class counsel's request for an award of $500,000 to pay outstanding and future litigation costs.  *See also In re WorldCom, Inc. Sec. Litig.,* 02 CIV 3288(DLC), 2004 WL 2591402, at *22 (S.D.N.Y.

Nov. 12, 2004) (creating a $5 million fund for the continuation of the litigation against the non-settling defendants).

This Court has previously approved similar requests in the *Wire Harness Litigation* (2:12-cv-00101, Doc. Nos. 232, 400), as well as in *Instrument Panel Clusters* (2:12-cv-00201, Doc. No. 109) and *Occupant Safety Systems* (2:12-cv-00601, Doc. No. 111).  Settlement Class Counsel respectfully request that they be permitted to use up to 20% of the Schaeffler settlement proceeds for the payment of litigation expenses.

## VI.     CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE

In the Notice Dissemination Order, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed Schaeffler settlement, the following Settlement Class:

> All individuals and entities (excluding any Defendant and its present and former parents, subsidiaries, and affiliates) that purchased Bearings in the United States directly from one or more Defendant from January 1, 2000 through March 21, 2017.

Doc. No. 240 at ¶4.

It is well established that a class may be certified for purposes of settlement.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24;  *Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[8]  As demonstrated below, the Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

---

[8] The Notice Dissemination Order (Doc. No. 240 at ¶ 19) provides that provisional certification of the Settlement Class will be without prejudice to the rights of any defendants to contest certification of any other class proposed in these coordinated actions.  *See Packaged Ice*, 2011 WL 717519, at *7.

A.      **The Proposed Direct Purchaser Settlement Class Satisfies Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b).  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

1.      **The Settlement Class is Sufficiently Numerous**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  *See also Davidson v. Henkel Corp.,* 302 F.R.D. 427, 441 (E.D. Mich. 2014) (noting it is generally accepted that class of 40 or more members is sufficient to satisfy the numerosity requirement).   Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to over 48,000 entities, geographically dispersed throughout the United States, that have been identified by Defendants as potential direct purchasers of Bearings.  Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

20

## 2.     There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, if "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 79 F. Supp 3d 712,731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 Newberg on Class Actions, § 18.05-15 (3d ed. 1992)).  Here, whether Defendants entered into an agreement to artificially fix prices of Bearings is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25.  Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on Class members. *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members").  "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class

members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3. Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other Settlement Class members: the Defendants' alleged violations of the antitrust laws. Plaintiffs and the other members of Settlement Class are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Antitrust Act. *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 02, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

22

These requirements are met here.  The interests of the proposed representatives of the Settlement Class - DALC Gear & Bearing Supply Corp., McGuire Bearing Company, and Sherman Bearings, Inc. - are the same as those of other Settlement Class members.  Plaintiffs are direct purchasers of Bearings from a Defendant in the United States.  Plaintiffs and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy, and seek to prove that Defendants violated the antitrust laws.  Plaintiffs' interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[9]  Settlement Class Counsel and other counsel with whom they are working vigorously represented Plaintiffs and the Settlement Class in the settlement negotiations with the Schaeffler Defendants, and have vigorously prosecuted this action.  Rule 23(a)(4)'s adequacy requirement is therefore satisfied.

**B.      Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), Plaintiffs must show that the putative class falls under at least one of the three subsections of Rule 23(b).  Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication

---

[9] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class.  The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman Kodroff & Willis, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases.  For the same reasons that the Court appointed them to that position, their appointment as Co-Lead Settlement Class Counsel is appropriate.

of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008);

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1.    Common Legal and Factual Questions Predominate

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed

class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623.   The

predominance requirement is met where "the issues in the class action that are subject to

generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues

that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th

Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-

suited for class certification because proof of the conspiracy is a common, predominating

question. *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *Scrap Metal*, 527 F.3d at 535;

*Packaged Ice*, 2011 WL 717519, at 6; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208,

2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010).   Affirming class certification in *Scrap

Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-

fixing and market allocation…will not vary among class members'….   Accordingly, the court

found that the 'fact of damages' was a question common to the class even if the amount of

damages sustained by each individual class member varied."   527 F.3d at 535 (emphasis in

original).

In this case the same set of core operative facts and theory of liability apply to each

member of the Settlement Class.   As discussed above, whether Defendants entered into an illegal

agreement to artificially fix prices of Bearings is a question common to all Settlement Class

members because it is an essential element of proving an antitrust violation. Common questions

also include whether, if such an agreement was reached, Defendants violated the antitrust laws,

and whether Defendants' acts caused anticompetitive effects.  *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6.  If Plaintiffs and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.  Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2.    A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Bearings litigation has been centralized in this Court.  If a Settlement Class member wants to control its own litigation, it can request exclusion from the Settlement Class.  Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case, because the settlement will end the litigation without a trial.  *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)).  Moreover, by proceeding as a class action, both judicial and private

25

resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class. *E.g.,* *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 326, 351 (E.D. Mich. 2001) ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury.")  The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996).  Thus, class litigation is superior to the alternatives in this case.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the settlement, certify the Settlement Class for purposes of the settlement only, and approve the request to use up to 20% of the Schaeffler Settlement Fund to pay Plaintiffs' litigation expenses.

DATED: September 11, 2017                    Respectfully submitted,

   /s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK + ASSOCIATES LAW
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct*
*Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
    & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
    & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Solomon B. Cera
Thomas C. Bright
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230

Manuel J. Dominguez
Cohen Milstein Sellers & Toll PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (877) 515-7955

*Direct Purchaser Plaintiffs' Counsel*

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2017, I electronically filed the foregoing paper

with the Clerk of the court using the ECF system which will send notification of such filing to all

counsel of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com
nfink@finkandassociateslaw.com

28