### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Sean F. Cox |
| IN RE: BEARINGS CASES | : : : | 2:12-cv-00501-SFC-RSW 2:15-cv-12068-SFC-RSW 2:15-cv-13932-SFC-RSW |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER CASES | : : : : | 2:15-cv-13945-SFC-RSW |

### MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH JTEKT, NACHI, NSK, NTN, AND SKF DEFENDANTS, FOR PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS, AND FOR AUTHORIZATION TO <u>DISSEMINATE NOTICE TO THE SETTLEMENT CLASS</u>

Direct Purchaser Plaintiffs DALC Gear & Bearing Supply Corp., McGuire Bearing Company, Sherman Bearings, Inc., and Bearing Service, Inc. ("Plaintiffs") hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for: preliminary approval of the proposed settlement ("Settlement") with Defendants JTEKT Corporation, JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.), Koyo France SA, Koyo Deutschland GmbH, Nachi-Fujikoshi Corp., Nachi America Inc., Nachi Technology, Inc., Nachi Europe GmbH, NSK Ltd., NSK Americas, Inc., NSK Europe Ltd., NSK Corporation, NTN Corporation, NTN USA Corporation, NTN Wälzlager GmbH, NTN-SNR Roulements SA., AB SKF, SKF GmbH, and SKF USA Inc. (collectively, the "Settling Defendants"); provisional certification of the proposed settlement class (the "Settlement Class"); and authorization to disseminate notice of the proposed Settlement and related matters to members of the Settlement Class. In support of this motion,

Plaintiffs rely upon the accompanying memorandum of law, which is incorporated by reference herein.

The parties do not request a hearing for this motion. Counsel for the Settling Defendants consent to this motion and to the entry of the proposed order preliminarily approving the proposed Settlement, provisionally certifying the Settlement Class, and authorizing dissemination of Notice.

DATED: February 16, 2021                     Respectfully submitted,

                                             _/s/David H. Fink_____
                                             David H. Fink (P28235)
                                             Nathan J. Fink (P75185)
                                             FINK BRESSACK
                                             38500 Woodward Ave; Suite 350
                                             Bloomfield Hills, MI 48304
                                             Telephone: (248) 971-2500

                                             *Interim Liaison Counsel for the Direct*
                                             *Purchaser Plaintiff*

Steven A. Kanner                             Joseph C. Kohn
William H. London                            William E. Hoese
Michael E. Moskovitz                         Douglas A. Abrahams
FREED KANNER LONDON                          KOHN, SWIFT & GRAF, P.C.
   & MILLEN LLC                              1600 Market Street, Suite 2500
2201 Waukegan Road, Suite 130                Philadelphia, PA  19103
Bannockburn, IL  60015                       Telephone: (215) 238-1700
Telephone: (224) 632-4500

Gregory P. Hansel                            Eugene A. Spector
Randall B. Weill                             William G. Caldes
Michael S. Smith                             Jeffrey L. Spector
PRETI, FLAHERTY, BELIVEAU                    SPECTOR ROSEMAN & KODROFF, P.C.
   & PACHIOS LLP                             Two Commerce Square
One City Center, P.O. Box 9546               2001 Market Street, Suite 3420
Portland, ME  04112-9546                     Philadelphia, PA  19103
Telephone: (207) 791-3000                    Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Solomon B. Cera
Thomas C. Bright
CERA LLP
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230

Manuel J. Dominguez
COHEN MILSTEIN SELLERS & TOLL,
PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400

***Additional Counsel for Direct Purchaser Plaintiffs***

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Sean F. Cox |
| IN RE: BEARINGS CASES | : : : | 2:12-cv-00501-SFC-RSW 2:15-cv-12068-SFC-RSW |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER CASES | : : : : | 2:15-cv-13932-SFC-RSW 2:15-cv-13945-SFC-RSW |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH JTEKT, NACHI, NSK, NTN, AND SKF DEFENDANTS, FOR PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS, AND FOR <u>AUTHORIZATION TO DISSEMINATE NOTICE TO THE SETTLEMENT CLASS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

STATEMENT OF ISSUES PRESENTED .................................................... viii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. x

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 1

III.  TERMS OF THE SETTLEMENT AGREEMENT .................................... 2

    A.    The Proposed Settlement Class ................................................ 3

    B.    The Settlement Amount ............................................................ 3

    C.    Releases .................................................................................... 4

IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
    WARRANTED. ................................................................................. 4

    A.    The Governing Standards. ........................................................ 4

    B.    The Proposed Settlement Provides Valuable Benefits to the Class. ...... 6

    C.    Consideration of the Final Approval Factors Supports Preliminary Approval of
    the Proposed Settlement. ............................................................ 6

        1.    The Class Representatives and Class Counsel Have Adequately
        Represented the Proposed Settlement Class, and the Settlement Was
        Reached at Arm's Length. ............................................... 8

        2.    The Relief Provided to the Proposed Settlement Class is Adequate. ....... 10

            a.    The Costs, Risks, and Delay of Trial and Appeal. ........................... 11

            b.    The Effectiveness of Any Proposed Method of Distributing Relief to
            the Proposed Settlement Class, Including the Method of Processing
            Class Member Claims, if Required. .............................. 13

            c.    The Terms of Any Proposed Award of Attorneys' Fees, Including
            Timing of Payment. ....................................................... 14

            d.    There Are No Separate Agreements Relating to the Proposed
            Settlement. ...................................................................... 15

        3.    The Settlement Treats Class Members Equitably Relative to Each
        Other. ........................................................................... 15

        4.    The Settlement Is Consistent with the Public Interest. .................... 15

V.    PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS
    WARRANTED. ............................................................................... 16

    A.    The Proposed Settlement Class Satisfies Rule 23(a). ................... 16

        1.    The Proposed Settlement Class Is Sufficiently Numerous. ............... 17

i

   2. There are Common Questions of Law and Fact. ...................................... 17

   3. Plaintiffs' Claims are Typical of Those of the Proposed Settlement Class. ........................................................................................................ 18

   4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class. ..................................................................................... 19

  B. Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes. ...................................................................................................... 20

   1. Common Legal and Factual Questions Predominate. ............................... 21

   2. A Class Action is Superior to Other Methods of Adjudication. ............... 22

VI. THE COURT SHOULD APPROVE THE NOTICE PLAN AND AUTHORIZE CLASS COUNSEL TO DISSEMINATE NOTICE TO THE SETTLEMENT CLASS. ............. 23

VII. PROPOSED TIMELINE FOR NOTICE AND FINAL APPROVAL ........................... 25

VIII. CONCLUSION ............................................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................. 16, 21, 22

*Barry v. Corrigan*,
  79 F. Supp. 3d 712 (E.D. Mich. 2015) ............................................................ 17, 19

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ................................................................................ 21

*Berry v. Sch. Dist. of City of Benton Harbor*,
  184 F.R.D. 93 (W.D. Mich. 1998) .......................................................................... 10

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................................................ 10

*Date v. Sony Electronics, Inc.*,
  2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ............................................ 13, 17, 19

*Dick v. Sprint Commc'ns*,
  297 F.R.D. 283 (W.D. Ky. 2014) ............................................................................ 9

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
  2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ...................................................... 17

*Ford v. Fed.-Mogul Corp.*,
  2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ..................................................... 11, 13

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) .................................................................................. 5

*Granada Invs. Inc. v. DWG Corp.*,
  962 F. 2d 1203 (6th Cir. 1992) .............................................................................. 15

*Griffin v. Flagstar Bancorp, Inc.*,
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................................. *Passim*

*Hoving v. Lawyers Title Ins. Co.*,
  256 F.R.D. 555 (E.D. Mich. 2009) ......................................................................... 20

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ................................................................................. 18

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F. Supp. 2d 336 (E.D. Pa. 2007)................................................................. 9, 11

*In re Automotive Parts Antitrust Litig. (Wire Harness Cases)*,
   2017 WL 469734 (E.D. Mich. Jan. 4, 2017) ........................................................ 5

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311,
   2016 WL 9280050 (E.D. Mich. Nov. 28, 2016) ..................................................... 7

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ...........................................................*Passim*

*In re Cardizem CD Antitrust Litig*,
   200 F.R.D. 297 (E.D. Mich. 2007) ...................................................................... 22

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ..................................................... 9

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................. 6, 13

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D 472 (W.D. Pa. 1999) ........................................................................ 18

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012) ........................................................................ 23

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 9

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................ 14

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003).................................................................. 6

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y 1996).......................................................................... 23

*In re Packaged Ice Antitrust Litig.*,
   2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)............................................... 4, 5, 9

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................................... 9

*In re Packaged Ice Antitrust Litig.*,
    08-MD-1952 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ............................................ *Passim*

*In re Polyurethane Foam Antitrust Litig.*,
    2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ...................................................... 7, 8

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ................................................................. 20, 21

*In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208,
    2013 WL 2155379 (E.D. Tenn. May 17, 2013) ....................................................... 9

*In re Southeastern Milk Antitrust Litig.*,
    2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ....................................................... 21

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ...................................................... 4, 5, 10, 12

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .............................................................. 16, 17, 19

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) ................................................ *Passim*

*IUE-CWA v. General Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) .............................................................. 11

*Lessard v. City of Allen Park*,
    372 F. Supp. 2d 1007 (E.D. Mich. 2005) ........................................................ 11

*Marsden v. Select Medical Corp.*,
    246 F.R.D. 480 (E.D. Pa. 2007) ................................................................ 17

*Olden v. Gardner*,
    294 Fed. Appx. 210 (6th Cir. 2008) ............................................................ 11

*Paper Systems Inc. v. Mitsubishi Corp.*,
    193 F.R.D. 601 (E.D. Wisc. 2000) .............................................................. 22

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .................................................................. 19

*Sheick v. Auto. Component Carrier LLC*,
    2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) .............................................. 11, 13

*Sheick v. Automotive Component Carrier LLC*,
   2010 WL 3070130 (E.D. Mich. Aug. 02, 2010) .................................................. 9, 19

*Sims v. Pfizer, Inc.*,
   2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ........................................................ 11

*Smith v. MCI Telecoms Corp.*,
   1993 WL 142006 (D. Kan. April 28, 1993) ............................................................ 14

*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ................................................................... 16, 17, 19

*Thacker v. Chesapeake Appalachia, LLC*,
   259 F.R.D. 262 (E.D. Ky. 2009) ............................................................................ 16

*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ...................................................................... 7, 19, 23

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ................................................................................. 10

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ................................................................... 11, 12, 13

**Rules**

Fed. R. Civ. P. 23 ............................................................................... 5, 7, 8, 25

Fed. R. Civ. P. 23(a) ......................................................................... 16, 17, 20

Fed. R. Civ. P. 23(a)(1) ................................................................................. 17

Fed. R. Civ. P. 23(a)(2) ........................................................................... 17, 18

Fed. R. Civ. P. 23(a)(3) ........................................................................... 18, 19

Fed. R. Civ. P. 23(a)(4) ........................................................................... 19, 20

Fed. R. Civ. P. 23(b) ................................................................................ 16, 20

Fed. R. Civ. P. 23(b)(3) .............................................................. 16, 20, 21, 22

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................... 24

Fed. R. Civ. P. 23(e) ............................................................................. *Passim*

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................ 5

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................ 5, 16

Fed. R. Civ. P. 23(e)(2) ........................................................................ 5, 6, 7, 8

Fed. R. Civ. P. 23(f) ...................................................................................... 2

Fed. R. Civ. P. 23(g) .................................................................................... 20

## STATEMENT OF ISSUES PRESENTED

1. Should the Court determine that the proposed settlement ("Settlement") between Direct Purchaser Plaintiffs DALC Gear & Bearing Supply Corp., McGuire Bearing Company, Sherman Bearings, Inc., and Bearing Service, Inc. ("Plaintiffs") and Defendants (a) JTEKT Corporation, JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.), Koyo France SA, and Koyo Deutschland GmbH ("JTEKT"); (b) Nachi-Fujikoshi Corp., Nachi America Inc., Nachi Technology, Inc., and Nachi Europe GmbH ("Nachi"); (c) NSK Ltd., NSK Americas, Inc., NSK Europe Ltd., and NSK Corporation ("NSK"); (d) NTN Corporation, NTN USA Corporation, NTN Wälzlager GmbH, and NTN-SNR Roulements ("NTN"); and (e) AB SKF, SKF GmbH, and SKF USA Inc. ("SKF") (all Defendants referenced in this paragraph, collectively, the "Settling Defendants"), as set forth in the Settlement Agreement between Plaintiffs and the Settling Defendants, is sufficiently fair, reasonable and adequate to warrant preliminary approval?

   Suggested Answer:  Yes.

2. Should the Court provisionally certify a Direct Purchaser Distributor Settlement Class (the "Settlement Class") under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the Settlement only?

   Suggested Answer:  Yes.

3. Should the Court appoint Plaintiffs as the representatives for the proposed Settlement Class, and the law firms of Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; Spector Roseman & Kodroff, P.C. as Co-Lead Settlement Class Counsel for the proposed Settlement Class ("Co-Lead Settlement Class Counsel")?

   Suggested Answer:  Yes.

4.      Should the Court authorize the dissemination of notice to Settlement Class members, in the form and manner proposed herein, of: (a) the proposed Settlement with Settling Defendants; (b) the proposed plan of distribution of the Settlement Fund; and (c) Settlement Class Counsel's motion for an award of attorneys' fees and reimbursement of litigation costs and expenses from the proceeds of the Settlement ("Settlement Fund")?

Suggested Answer:  Yes.

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.*, 12-MD-02311, 2:12-cv-00103, ECF No. 497 (E.D. Mich.
    June 20, 2016)

*Date v. Sony Electronics, Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.*,
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
497 F.3d 615 (6th Cir. 2007)

## I.      INTRODUCTION

Plaintiffs, on behalf of the proposed Settlement Class (defined more specifically below) comprised of distributors who directly purchased Bearings in the United States, have reached a settlement with the JTEKT, Nachi, NSK, NTN, and SKF Defendants ("Settling Defendants"). Under the terms of the proposed Settlement, the Settling Defendants will pay Plaintiffs and the Settlement Class $37,500,000 ("Settlement Fund").[1]

Plaintiffs respectfully move this Court for an Order preliminarily approving the proposed Settlement with the Settling Defendants and provisionally certifying the Settlement Class. Plaintiffs also move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order authorizing the dissemination of notice to the proposed Settlement Class regarding: (1) the proposed settlement with the Settling Defendants; (2) a proposed plan for distributing the settlement proceeds; and (3) Settlement Class Counsel's motion for an award of attorneys' fees and reimbursement of litigation costs and expenses from the Settlement Fund.

## II.     BACKGROUND

Beginning in 2012, Plaintiffs filed class action lawsuits[2] on behalf of direct purchasers of Bearings.[3] Plaintiffs allege that Defendants conspired to raise, fix, maintain, and/or stabilize prices,

---

[1] On November 15, 2017, the Court entered an Order and Final Judgment finally approving Plaintiffs' settlement with Defendants Schaeffler Group USA Inc., Schaeffler Technologies AG & Co. KG (formerly Schaeffler Technologies GmbH & Co. KG), and FAG Kugelfischer GmbH ("Schaeffler Defendants"). If the instant Bearings Settlement is finally approved, the Direct Purchaser Plaintiffs' claims in this litigation will be fully resolved.

[2] *See In re Bearings Cases*, No. 2:12-cv-00501 (E.D. Mich.); *DALC Gear & Bearing Supply Corp., et al. v. Koyo France SA, et al.*, No. 2:15-cv-12068 (E.D. Mich.); *DALC Gear & Bearing Supply Corp., et al. v. NSK Corp.*, No. 2:15-cv-13932 (E.D. Mich.); and *Bearing Service, Inc. v. NSK Ltd. et al.*, No. 2:15-cv-13945 (E.D. Mich.).

[3] The term "Bearings" refers to friction-reducing devices used in both automotive and industrial machinery that allow one moving part to glide past another moving part. Examples

1

rig bids, and/or allocate the supply of Bearings sold in the United States, in violation of federal antitrust laws. Plaintiffs further allege that because of the conspiracy, they and other direct purchasers of Bearings were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and Plaintiffs seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees. Settling Defendants deny they are liable for the claims asserted by Plaintiffs and contend they have good defenses for such claims.

After a significant amount of discovery had been taken, Plaintiffs filed a motion for class certification (2:12-cv-00501, ECF No. 216). On January 7, 2019, the Court denied Plaintiffs' class certification motion. ECF No. 381. Plaintiffs' Rule 23(f) motion for leave to appeal was also denied. *In re Automotive Parts Antitrust Litig.*, No, 19-0101 (6th Cir. Apr. 1, 2019). Subsequently, the Court allowed Plaintiffs to file a renewed motion for certification of a class limited to Bearings distributors. The proposed Settlement Class is comprised of these entities.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

At various times throughout the 8 years that this litigation has been pending, the parties have engaged in settlement discussions; sometimes through direct negotiations, and at other times with the assistance of Court-appointed mediators. Thus, it is not hyperbole to state that after years of negotiations with Settling Defendants' counsel, Plaintiffs reached the Settlement with Settling Defendants on November 23, 2020 ("Settlement Agreement") (Attached as Exhibit 1). The Settlement Agreement was executed after arm's-length and good faith negotiations between experienced and sophisticated counsel. During the negotiations, the merits of the respective parties' positions were discussed and evaluated. As part of the settlement negotiations, the parties

---

include, but are not limited to, the following products: ball bearings, tapered roller bearings, needle roller bearings, roller bearings, and mounted bearings of any size.

communicated extensively, and Settlement Class Counsel analyzed information obtained through extensive discovery, as well as information provided to them by Settling Defendants, relevant industry data, and other pertinent information. Ultimately, with the assistance of a Court-appointed mediator, the parties were able to reach agreement.

The Settlement is the result of these good-faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of their claims and defenses and their clients' respective positions. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate for the proposed Settlement Class.

The material terms of the proposed settlement are summarized below.

### A.    The Proposed Settlement Class

Plaintiffs and the Settling Defendants seek certification, for purposes of the Settlement, of the proposed Settlement Class, which is defined as:

> All distributors that purchased bearings in the United States directly from one or more Defendant in the Bearings Actions (or their subsidiaries or affiliates) from and including January 1, 2000 through December 31, 2014 (the "Settlement Class Period"). Excluded from the class are the Defendants in the Bearings Actions and their present and former parents, subsidiaries, affiliates, and joint ventures.

Exhibit 1 at ¶ 8.

For purposes of the proposed Settlement Class definition, "Defendant" includes the Settling Defendants and the Schaeffler Defendants (*see* Footnote 1, *supra*).  Exhibit 1 at ¶ 4.

### B.    The Settlement Amount

Pursuant to the Settlement Agreement, the Settling Defendants have agreed to pay $37,500,000 ("Settlement Amount") to settle Plaintiffs' claims. The Settlement Amount constitutes a meaningful recovery and reflects consideration of information obtained through

extensive discovery, and Settlement Class Counsel's factual investigation and legal analysis. Settling Defendants will pay the Settlement Amount into an interest-bearing escrow account. Exhibit 1 at ¶ 24.

### C. Releases

The Settlement Agreement provides, *inter alia*, for the release by Plaintiffs and the other members of the proposed Settlement Class of certain claims concerning sales of Bearings to distributor customers who purchased those products in the United States directly from a Defendant.

The releases specifically exclude certain claims against the Settling Defendants, including claims based upon indirect purchases of Bearings; claims based on negligence, personal injury, or product defects; claims brought under the laws other than those of the United States relating to purchases of Bearings outside the United States; and claims concerning any product other than Bearings. Exhibit 1 at ¶ 22.

## IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS WARRANTED.

### A. The Governing Standards.

Approval of a class action settlement involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, ECF No. 497, at 8 (E.D. Mich. June 20, 2016) (quoting *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001)). *See also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010); *Manual For Complex Litig. (Fourth)* § 21.63 (2004).

The 2018 amendments to Rule 23 codified the preliminary approval process. First, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (1) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The amended Rule 23(e) preliminary approval procedure is substantively the same as that previously approved in the Sixth Circuit and applied by this Court in prior *Auto Parts Litigation* settlements, namely a preliminary two-part determination that (1) the settlement is approvable and (2) the settlement class can be certified. *See, e.g., In re Automotive Parts Antitrust Litig. (Wire Harness Cases),* 2017 WL 469734, at *1 (E.D. Mich. Jan. 4, 2017) (granting preliminary approval upon making preliminary determinations that the settlement was approvable and a settlement class could be certified); *Packaged Ice*, 2010 WL 3070161 at *4 (determining "whether the proposed settlement has the 'potential' for final approval and … whether there is reason enough to notify class members and to proceed with a fairness hearing") (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)).

The court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F.

5

Supp. 2d at 1015 (quoting *Manual for Complex Litig. (Second)* §30.44 (1985)); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that it will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483, 495-96 (E.D. Mich. 2008). The final determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement are assessed under the applicable final approval factors. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

**B.     The Proposed Settlement Provides Valuable Benefits to the Class.**

The Settlement provides for a cash payment by Settling Defendants of $37,500,000. The Settlement Amount constitutes a meaningful recovery and reflects consideration of information obtained through extensive discovery, and Settlement Class Counsel's factual investigation and legal analysis.

**C.     Consideration of the Final Approval Factors Supports Preliminary Approval of the Proposed Settlement.**

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and finding that the settlement is "fair, reasonable, and adequate." *See In re Packaged Ice Antitrust Litig.*, No 08-MD-1952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). As noted above, the Court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would. Here, initial consideration of the final approval factors supports preliminary approval of the Settlement.

6

The 2018 amendments to Rule 23(e) set forth a list of factors for a court to consider before approving a proposed settlement as "fair, reasonable, and adequate." The factors are whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>
>> (i)  the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>>
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement is approvable. *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest"). *Accord UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin v. Flagstar Bancorp, Inc.,* No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015). The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated

Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 Advisory Committee Note (2018 Amendment).

Accordingly, Plaintiffs will address the "fair, reasonable and adequate" factors under Rule 23(e)(2) and the Sixth Circuit's and this Court's prior preliminary approval decisions. A review of the factors supports preliminary approval of the Settlement.

**1. The Class Representatives and Class Counsel Have Adequately Represented the Proposed Settlement Class, and the Settlement Was Reached at Arm's Length.**

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee Note. Relevant considerations may include the experience and expertise of plaintiffs' counsel, the quantum of information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorneys' fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

Plaintiffs and Settlement Class Counsel have adequately represented the proposed Settlement Class in connection with the Settlement and the litigation in general. The Plaintiffs' interests are the same as those of the Settlement Class members, and Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts*

*Antitrust Litigation* and negotiated the Settlement at arm's length with well-respected and experienced counsel for Settling Defendants, and with the assistance of a Court-appointed mediator. There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *19-20 (E.D. Mich. Aug. 02, 2010). Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

The negotiations that led to the Settlement were at all times conducted at arm's length, took many years to complete, and were completed with the assistance of a Court-appointed mediator. Further, in addition to the information obtained by Settlement Class Counsel in connection with their investigation of the Bearings industry and alleged conspiracy, there has been an enormous amount of fact and expert discovery in this action.[4] This information and Settlement Class

---

[4] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)). *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

Counsel's legal analysis allowed Settlement Class Counsel to effectively evaluate the strengths and weaknesses of Plaintiffs' claims. Based on this information, Settlement Class Counsel believe that the proposed Settlement is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports both preliminary (and final) approval of the settlement.[5]

Because the proposed Settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, and the negotiations were aided by the involvement of a Court-appointed mediator, these factors fully support preliminary approval of the Settlement.

**2.   The Relief Provided to the Proposed Settlement Class is Adequate.**

The relief provided to the proposed Settlement Class consists of a cash payment by Settling Defendants of $37,500,000. Settlement Class Counsel believe that the substantial cash payment constitutes adequate relief for the proposed Settlement Class.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* §30.42). This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

---

[5] There was no negotiation of attorneys' fees. At an appropriate time, Plaintiffs' counsel will file a motion seeking an award of attorneys' fees and expenses.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 11 (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013)). *Accord Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016). A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

### a.  The Costs, Risks, and Delay of Trial and Appeal.

When considering the adequacy of the relief to the class in determining the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015). These risks must be weighed against the certainty of a cash payment by Settling Defendants in the amount of $37,500,000.

11

Settlement Class Counsel believe that the Settlement is an excellent result, and that weighing the Settlement's benefits against the risks and costs of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9. Plaintiffs are optimistic about the likelihood of ultimate success in this case, but success is not certain. Settling Defendants are represented by highly experienced and competent counsel. Settling Defendants undoubtedly would continue to deny Plaintiff's allegations of liability and damages and assert numerous defenses, and Plaintiffs believe Settling Defendants are prepared to defend this case through trial and appeal. Risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while optimistic about the outcome of this litigation, Plaintiffs must acknowledge the risk that Settling Defendants could prevail with respect to certain legal or factual issues, which could reduce or eliminate any potential recovery.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics*, 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

As this case is still ongoing until final approval is granted, it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation as Settling Defendants could seek to use any such disclosures against Plaintiffs going forward if final approval is not granted. Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the proposed Settlement negates.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated the Settlement at arm's length with well-respected and experienced counsel for Settling Defendants. Settlement Class Counsel believe that the proposed Settlement eliminates the risks, expense, and delay with respect to a recovery from Settling Defendants while ensuring a substantial payment to the proposed Settlement Class. This factor also supports preliminary approval of the proposed settlement.

> **b. The Effectiveness of Any Proposed Method of Distributing Relief to the Proposed Settlement Class, Including the Method of Processing Class Member Claims, if Required.**

This case does not present any difficulties in identifying claimants or distributing settlement proceeds. Consistent with the practice in previously approved *Automotive Parts Antitrust Litigation* direct purchaser settlements, Settlement Class Counsel presently intend to propose that the net settlement fund be distributed *pro rata* to approved claimants. Claims will be processed using a settlement claims administrator to review claim forms, to assist Settlement Class

Counsel in making recommendations to the Court concerning the disposition of those claims, and to mail checks to approved claimants for their pro-rata shares of the net settlement fund.

Generally, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at *2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, §12.35, at 350 (4th ed. 2002) (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). Similar pro-rata distribution plans have been approved in other cases in the *Automotive Parts Antitrust Litigation. See, e.g., Occupant Safety Systems* (2:12-cv-00601, ECF No. 172); *Wire Harness* (2:12-cv-00101, ECF No. 572); *Radiators* (2:13-cv-01001, ECF No. 61). This factor supports preliminary approval.

### c.  The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment.

The Settlement Agreement provides that attorneys' fees shall be paid solely out of the settlement fund subject to court approval, and that final approval of the settlement is not contingent on the outcome of any petition for attorneys' fees. Exhibit 1 at ¶ 33. Settlement Class Counsel intend to seek attorneys' fees not to exceed 33.33% of the settlement fund, consistent with previous fee petitions and awards approved by this Court in the *Automotive Parts Antitrust Litigation* and Courts in the Sixth Circuit generally. This factor supports preliminary approval.

> ### d. There Are No Separate Agreements Relating to the Proposed Settlement.

The Settlement Agreement reflects all the agreements and understandings relating to the proposed settlement, and there are no separate agreements that would affect the settlement amount, the eligibility of class members to participate in the settlement or exclude themselves from it, or the treatment of class members' claims. This factor is therefore neutral.

> ### 3. The Settlement Treats Class Members Equitably Relative to Each Other.

Class members will be treated equitably relative to each other in terms of their eligibility for a pro-rata portion of the settlement fund and their right to opt-out. Likewise, each class member gives the same releases. Plaintiffs submit that this factor supports preliminary approval.

> ### 4. The Settlement Is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed Settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of the above factors supports preliminary approval of the proposed Settlement with Settling Defendants. Settlement Class Counsel respectfully submit that the Settlement is in the best interests of the proposed Settlement Class and should be preliminarily approved.

V.   **PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED.**

Rule 23 as amended now explicitly requires the Court to determine whether it is likely to be able to certify the proposed settlement class for purposes of judgment on the settlement proposal. Fed. R. Civ. P. 23(e)(1)(B). It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 24. At this juncture, the Court need only decide that certification of the proposed Settlement Class is "likely" to justify sending notice to members of the proposed Settlement Class. Plaintiff will later seek final approval of the proposed Settlement Class for purposes of the settlement. *See Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-17. As they did with their preliminary approval analysis, Plaintiffs will address the factors for final certification here. *See Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[6]

As demonstrated below, the proposed Settlement Class meets all the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes, and therefore it is likely that the Court will be able to certify the proposed Settlement Class.

A.   **The Proposed Settlement Class Satisfies Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification

---

[6] Paragraph 21 of the proposed Preliminary Approval Order provides that provisional certification of the proposed Settlement Class will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

### 1.    The Proposed Settlement Class Is Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that a "substantial" number of class members satisfies numerosity). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, Settlement Class Counsel believe that there are hundreds of distributors geographically dispersed throughout the United States that directly purchase Bearings from the Defendants. Thus, joinder of all proposed Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.    There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be

17

only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an agreement to artificially fix prices of Bearings is a factual question common to all members of the proposed Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on Settlement Class members. *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3. Plaintiffs' Claims are Typical of Those of the Proposed Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among

named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at *19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other members of the proposed Settlement Class, namely, the Defendants' alleged violations of the antitrust laws. Plaintiffs and the proposed Settlement Class are proceeding on the same legal claim and same alleged violation of Section 1 of the Sherman Antitrust Act. *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class.

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed representatives of the proposed Settlement Class – DALC Gear & Bearing Supply Corp., McGuire Bearing Company, Sherman Bearings, Inc., and Bearing Service, Inc. – are aligned with those of the other members of the proposed Settlement Class. Plaintiffs are distributors and direct purchasers of Bearings from one or more of the Defendants in the United States. Plaintiffs and the other members of the proposed Settlement Class claim that they were injured because of the alleged conspiracy and seek

to prove that Defendants violated the antitrust laws. Plaintiffs' interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[7] Settlement Class Counsel and other counsel with whom they are working have vigorously represented Plaintiffs and the proposed Settlement Class in the settlement negotiations with Settling Defendants and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

### B. Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), Plaintiffs must show that the putative class falls under at least one of the three subsections of Rule 23(b). Here, the proposed Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "[1] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… [2] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

---

[7] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* direct purchaser cases. They submit that, for the same reasons that the Court appointed them to those positions, their appointment as Co-Lead Settlement Class Counsel is appropriate. Cera LLP and Cohen Milstein Sellers & Toll are law firms that have worked cooperatively and extensively with Interim Co-Lead Counsel on this case. Both firms have extensive experience handling class action antitrust cases and other complex litigation and are well-equipped to serve as additional Settlement Class Counsel.

### 1.    Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 27; *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at 6; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'…. Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."  527 F.3d at 535 (emphasis in original).

In this case, the same core set of operative facts and theory of liability apply across the proposed Settlement Class. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Bearings is a question common to all members of the proposed Settlement Class because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Plaintiffs and the other members of the proposed Settlement Class were to bring their own individual actions, they would each be required to prove

the same wrongdoing by Defendants to establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2.      A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Bearings litigation has been centralized in this Court. If a member of the proposed Settlement Class wants to control its own litigation, it can request exclusion from the proposed Settlement Class. Thus, consideration of factors (1) – (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial. *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the proposed Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)). Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the proposed Settlement Class. *See,*

*e.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury."). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

## VI.   THE COURT SHOULD APPROVE THE NOTICE PLAN AND AUTHORIZE CLASS COUNSEL TO DISSEMINATE NOTICE TO THE SETTLEMENT CLASS.

The 2018 amendments to Federal Rule of Civil Procedure 23 provide that, "upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) [ ] the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). *Accord In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013). In addition, the "notice must clearly and concisely state in plain, easily understood language": (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who validly

23

requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The notice program and forms of notice proposed by Plaintiffs satisfy these requirements. The Notice of Proposed Settlements of Direct Purchaser Class Action with the JTEKT, Nachi, NSK, SKF, and NTN Defendants and Hearing on Settlement Approval and Related Matters, and Claim Form ("Notice") (attached as Exhibit 2) sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1); apprises members of the Settlement Class that Settlement Class Counsel will seek an award of attorneys' fees and reimbursement of litigation costs and expenses from the Settlement Fund; and apprises members of the Settlement Class that Settlement Class Counsel will propose a plan of distribution of the settlement proceeds.[8] The Notice will be disseminated by first class mail, postage prepaid, to all entities identified by Defendants as potential members of the settlement classes. The Notice will also be provided to all persons who request it in response to the Summary Notice or the Press Release. In addition, a copy of the Notice will be posted on the website dedicated to this litigation.

The Summary Notice of Proposed Settlements of Direct Purchaser Class Action with the JTEKT, Nachi, NSK, SKF, and NTN Defendants and Hearing on Settlement Approval and Related Matters ("Summary Notice") (attached as Exhibit 3) will be published in one edition of *Automotive News*. To supplement the notice program further, an Informational Press Release (the "Press Release") (attached as Exhibit 4) will be issued nationwide via PR Newswire's "Auto Wire,"

---

[8] As noted above, Settlement Class Counsel will propose that members of the settlement classes receive a *pro rata* share of the net settlement proceeds based upon their Bearings purchases during the Class Period. Details of the plan of distribution are set forth in the proposed Notice. A Proof of Claim Form will be sent to members of the Settlement Class along with the Notice.

which targets auto industry trade publications, and via PR Newswire's "Machinery and Equipment" microlist.[9]

Plaintiffs believe that the content of the Notice, Summary Notice, and Press Release, and the proposed method for their dissemination, fulfill the requirements of Rule 23 and due process. *See In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2011 WL 717519, at *5 (E.D. Mich. Feb. 22, 2011). Accordingly, approval of the notice program is appropriate.

## VII.   PROPOSED TIMELINE FOR NOTICE AND FINAL APPROVAL

Plaintiffs propose the following schedule for disseminating notice of the Settlement, and related matters:

1.     Within twenty (20) days of the date of entry of the Notice Order, the Notice shall be mailed by first class mail, postage prepaid, to all potential members of the Settlement Class identified by Defendants, and shall be posted on the Internet at www.autopartsantitrustlitigation.com/Bearings, the website dedicated to this litigation;

2.     Within thirty (30) days of the date of entry of the Notice Order, the Summary Notice shall be published in one edition of *Automotive News*. To supplement the notice program further, the Press Release will be issued nationwide via PR Newswire's "Auto Wire," which targets auto industry trade publications, and via PR Newswire's "Machinery and Equipment" microlist;

3.     Within fifty (50) days from the date of entry of the Notice Order, Settlement Class Counsel shall file with the Court their motion or motions for: final approval of the proposed

---

[9] These proposed forms of notice and the timeline for the notice program are similar to those approved by the Court in this and other auto parts cases, *Bearings* (2:12-cv-00501, ECF No. 465), *Air Conditioning Systems* (2:13-cv-02701, ECF No. 168)**;** *Power Window Motors* (2:13-cv-02301, ECF No. 79), *Windshield Washer Systems* (2:13-cv-02801, ECF No. 109), and *Windshield Wiper Systems* (2:3-cv-00901, ECF No. 116).

Settlement; approval of a proposed plan of distribution of the Settlement Fund; and an award of attorneys' fees and reimbursement of litigation costs and expenses from the Settlement Fund.

4.      All requests for exclusion from the Settlement Class must be submitted in writing, postmarked no later than seventy (70) days from the date of entry of the Notice Order, and must otherwise comply with the requirements set forth in the Notice;

5.      All objections by any member of the Settlement Class to the proposed Settlement, to the proposed plan of distribution of the Settlement Fund, or to Settlement Class Counsel's requests for attorneys' fees and reimbursement of expenses, must be submitted in writing, must be filed with the Clerk of Court, must be postmarked no later than seventy (70) days from the date of the Notice Order, and must otherwise comply with the instructions set forth in the Notice;

6.      At least ten (10) days before the date fixed by the Court for the fairness hearing, Settlement Class Counsel shall file with the Court affidavits or declarations of the person under whose general direction the mailing and posting of the Notice, and publication of the Summary Notice and Press Release, were made, showing that mailing, posting, and publication were made in accordance with the Notice Order; and

7.      The fairness hearing on final approval of the proposed settlements and related matters shall be scheduled at the Court's convenience on a date on or after one hundred and five (105) days from the date of entry of the Notice Order.

The foregoing deadlines are substantially similar to those approved by the Court in connection with final approval of prior settlements in the *Automotive Parts Antitrust Litigation.*

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, provisionally certify the Settlement Class, and authorize the dissemination of notice to members of the Settlement Class.

DATED: February 16, 2021

Respectfully submitted,

  /s/David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

***Interim Liaison Counsel for the Direct Purchaser Plaintiff***

| | |
|---|---|
| Steven A. Kanner | Joseph C. Kohn |
| William H. London | William E. Hoese |
| Michael E. Moskovitz | Douglas A. Abrahams |
| FREED KANNER LONDON | KOHN, SWIFT & GRAF, P.C. |
| & MILLEN LLC | 1600 Market Street, Suite 2500 |
| 2201 Waukegan Road, Suite 130 | Philadelphia, PA 19103 |
| Bannockburn, IL 60015 | Telephone: (215) 238-1700 |
| Telephone: (224) 632-4500 | |
| | |
| Gregory P. Hansel | Eugene A. Spector |
| Randall B. Weill | William G. Caldes |
| Michael S. Smith | Jeffrey L. Spector |
| PRETI, FLAHERTY, BELIVEAU | SPECTOR ROSEMAN & KODROFF, P.C. |
| & PACHIOS LLP | Two Commerce Square |
| One City Center, P.O. Box 9546 | 2001 Market Street, Suite 3420 |
| Portland, ME 04112-9546 | Philadelphia, PA 19103 |
| Telephone: (207) 791-3000 | Telephone: (215) 496-0300 |

***Interim Co-Lead Counsel for the Direct Purchaser Plaintiff***

| | |
|---|---|
| Solomon B. Cera | Manuel J. Dominguez |
| Thomas C. Bright | COHEN MILSTEIN SELLERS & TOLL, |
| CERA LLP | PLLC |
| 595 Market Street, Suite 1350 | 2925 PGA Boulevard, Suite 200 |
| San Francisco, CA 94105 | Palm Beach Gardens, FL 33410 |
| Telephone: (415) 777-2230 | Telephone: (561) 515-1400 |

***Additional Counsel for Direct Purchaser Plaintiffs***

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2021, I electronically filed the foregoing paper with the Clerk of the court using the ECF system, which will send notification of such filing to all counsel of record registered for electronic filing.

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkbressack.com