**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **CASE NO. 12-MD-02311**<br>**HON. SEAN F. COX** |
| **In Re: BEARINGS CASES** | **2:12-cv-00501-SFC-RSW**<br>**2:15-cv-12068-SFC-RSW**<br>**2:15-cv-13932-SFC-RSW**<br>**2:15-cv-13945-SFC-RSW** |
| **THIS RELATES TO:**<br>**ALL DIRECT PURCHASER ACTIONS** | |

**DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF PROPOSED SETTLEMENT WITH THE**
**JTEKT, NACHI, NSK, NTN, AND SKF DEFENDANTS AND**
**PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS**

Direct Purchaser Plaintiffs DALC Gear & Bearing Supply Corp., McGuire Bearing Company, Sherman Bearings, Inc., and Bearing Service, Inc. hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement with Defendants JTEKT Corporation, JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.), Koyo France SA, Koyo Deutschland GmbH, Nachi-Fujikoshi Corp., Nachi America Inc., Nachi Technology, Inc., Nachi Europe GmbH, NSK Ltd., NSK Americas, Inc., NSK Europe Ltd., NSK Corporation, NTN Corporation, NTN USA Corporation, NTN Wälzlager (Europa) GmbH, NTN-SNR Roulements SA, AB SKF, SKF GmbH, and SKF USA Inc., and the proposed plan for distribution of settlement funds. In support of this motion, Plaintiffs rely on the accompanying memorandum of law, which is incorporated by reference herein.

DATED: April 16, 2021

Respectfully submitted,

 /s/*David H. Fink*
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

***Interim Liaison Counsel for the Direct Purchaser Plaintiffs***

| | |
|---|---|
| Steven A. Kanner | Joseph C. Kohn |
| William H. London | William E. Hoese |
| Michael E. Moskovitz | Douglas A. Abrahams |
| FREED KANNER LONDON | KOHN, SWIFT & GRAF, P.C. |
|   & MILLEN LLC | 1600 Market Street, Suite 2500 |
| 2201 Waukegan Road, Suite 130 | Philadelphia, PA  19103 |
| Bannockburn, IL  60015 | Telephone: (215) 238-1700 |
| Telephone: (224) 632-4500 | |
| | |
| Gregory P. Hansel | Eugene A. Spector |
| Randall B. Weill | William G. Caldes |
| Michael S. Smith | Jeffrey L. Spector |
| PRETI, FLAHERTY, BELIVEAU | SPECTOR ROSEMAN & KODROFF, P.C. |
|   & PACHIOS LLP | 2001 Market Street, Suite 3420 |
| One City Center, P.O. Box 9546 | Philadelphia, PA  19103 |
| Portland, ME  04112-9546 | Telephone: (215) 496-0300 |
| Telephone: (207) 791-3000 | |

***Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs***

| | |
|---|---|
| Solomon B. Cera | Manuel J. Dominguez |
| Thomas C. Bright | COHEN MILSTEIN SELLERS & TOLL, |
| CERA LLP | PLLC |
| 595 Market Street, Suite 1350 | 11780 U.S. Highway One, Suite N 500 |
| San Francisco, CA 94105 | Palm Beach Gardens, FL 33408 |
| Telephone: (415) 777-2230 | Telephone: (561) 515-1400 |

***Additional Counsel for Direct Purchaser Plaintiffs***

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **CASE NO. 12-MD-02311** |
| | **HON. SEAN F. COX** |
| **In Re: BEARINGS CASES** | |
| | **2:12-cv-00501-SFC-RSW** |
| | **2:15-cv-12068-SFC-RSW** |
| | **2:15-cv-13932-SFC-RSW** |
| | **2:15-cv-13945-SFC-RSW** |
| **THIS RELATES TO:** | |
| **ALL DIRECT PURCHASER ACTIONS** | |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH THE JTEKT, NACHI, NSK, NTN, AND SKF DEFENDANTS AND PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF ISSUES PRESENTED....................................................... viii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. ix

INTRODUCTION ............................................................................................. 1

I.   BACKGROUND AND PROCEDURAL HISTORY ................................................ 1

II.   TERMS OF THE SETTLEMENT AGREEMENT ............................................... 3

III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ................................................ 4

  A.   The Governing Standards................................................................... 4

  B.   The Proposed Settlement is Fair, Reasonable, and Adequate. ......................................... 5

    1.   The Class Representatives and Class Counsel Have Adequately Represented the Class, and the Settlement Was Reached at Arm's Length........................................ 8

    2.   The Relief Provided to the Class is Significant. ...................................... 10

      a.   The Costs, Risks, and Delay of Trial and Appeal.................................... 10

      b.   The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, if Required. ............. 13

      c.   The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment. ................................................................................. 13

      d.   There Are No Separate Agreements Relating to the Proposed Settlement............. 14

    3.   The Settlement Treats Class Members Equitably Relative to Each Other. ................ 14

    4.   The Settlement is Consistent with the Public Interest. .............................. 14

IV.   NOTICE WAS PROPER UNDER RULE 23 AND DUE PROCESS ............................. 14

V.   THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUNDS IS FAIR, REASONABLE, AND ADEQUATE AND MERITS APPROVAL ................... 16

VI.   CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE................................................................................. 18

A.   The Proposed Direct Purchaser Distributor Settlement Class Satisfies Rule 23(a)...... 19

   1.  The Settlement Class is Sufficiently Numerous. ......................................................... 19

   2.  There are Common Questions of Law and Fact. ......................................................... 20

   3.  Plaintiffs' Claims Are Typical of Those of the Settlement Class............................. 21

   4.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. .................. 21

B.   Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes. 22

   1.  Common Legal and Factual Questions Predominate. ................................................. 23

   2.  A Class Action is Superior to Other Methods of Adjudication. ................................ 24

VII.   CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................... 18, 23, 24

*Barry v. Corrigan,*
  2015 WL 136238 (E.D. Mich. Jan 9, 2015) ........................................................ 20, 21

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ...................................................................................... 23

*Berry v. Sch. Dist. of City of Benton Harbor,*
  184 F.R.D. 93 (W.D. Mich. 1998) ................................................................................. 6

*Carson v. Am. Brands, Inc.,*
  450 U.S. 79 (1981) ..................................................................................................... 6

*Date v. Sony Electronics, Inc.,*
  2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ........................................... 12, 19, 21

*Dick v. Sprint Commc'ns,*
  297 F.R.D. 283 (W.D. Ky. 2014) ............................................................................. 5, 9

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
  2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ........................................................ 20

*Ford v. Fed.-Mogul Corp.,*
  2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ...................................................... 10, 12

*Granada Invs. Inc. v. DWG Corp.,*
  962 F. 2d 1203 (6th Cir. 1992) ................................................................................. 14

*Griffin v. Flagstar Bancorp, Inc.,*
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ................................................ Passim

*Hoving v. Lawyers Title Ins. Company,*
  256 F.R.D. 555 (E.D. Mich. 2009) ........................................................................... 23

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) ................................................................................... 20

*In re American Bank Note Holographics, Inc.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................... 16

*In re Auto. Refinishing Paint Antitrust Litig.*,
    617 F. Supp. 2d. 336 (E.D. Pa. 2007) .......................................................................... 9

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311,
    2016 WL 9280050 (E.D. Mich. Nov. 28, 2016) ........................................................ 7

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................Passim

*In re Cardizem CD Antitrust Litig*,
    200 F.R.D. 297 (E.D. Mich. 2007) ........................................................................... 24

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .......................................................... 9

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D 472 (W.D. Pa. 1999) .............................................................................. 20

*In re Flonase Antitrust Litig.*,
    284 F.R.D. 207 (E.D. Pa. 2012) .............................................................................. 25

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013) ................................................................................ 16

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................. 16

*In re Insurance Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (E.D. Pa. 2013) .............................................................................. 15

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y 1996) ............................................................................. 25

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 717519 (E.D. Mich. Feb. 22, 2011)..................................................Passim

*In re Polyurethane Foam Antitrust Litig.*,
    2015 WL 1639269 (N.D. Ohio Feb. 26, 2015)..................................................... 7, 8

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ................................................................................... 23

*In re Southeastern Milk Antitrust Litig.*, 2:07-cv-208,
    2013 WL 2155379 (E.D. Tenn. May 17, 2013) ........................................................ 9

*In re Southeastern Milk Antitrust Litig.*,
   2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ......................................................... 23

*In re Vitamins Antitrust Litig.*,
   2000 WL 1737867 (D. D.C. Mar. 31, 2000) ........................................................... 17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ........................................................... 19, 20, 21

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
   2006 WL 1984363 (E.D. Mich. July 13, 2006) .................................................Passim

*IUE-CWA v. General Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ........................................................... 5, 10

*Law v. National Collegiate Athletic Ass'n.*,
   108 F. Supp. 2d 1193 (D. Kan. 2000) ........................................................... 16

*Lessard v. City of Allen Park*,
   372 F. Supp. 2d 1007 (E.D. Mich. 2005) ........................................................... 7

*Marsden v. Select Medical Corp.*,
   246 F.R.D. 480 (E.D. Pa. 2007) ........................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ........................................................... 15

*Olden v. Gardner*,
   294 Fed. Appx. 210 (6th Cir. 2008) ........................................................... 7

*Paper Systems Inc. v. Mitsubishi Corp.*,
   193 F.R.D. 601 (E.D. Wisc. 2000) ........................................................... 24

*Prandin Direct Purchaser Antitrust Litig.*,
   2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ........................................................... 17, 18

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ........................................................... 21

*Sheick v. Auto. Component Carrier LLC*,
   2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) .................................................5, 7, 10, 12

*Sheick v. Automotive Component Carrier LLC*,
   2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ........................................................... 8, 21

*Sims v. Pfizer, Inc.*,
    2016 WL 772545 (E.D. Mich. Feb. 24, 2016)............................................................. 6

*Smith v. MCI Telecoms Corp.*,
    1993 WL 142006 (D. Kan. April 28, 1993) ............................................................. 16

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ............................................................. 19, 20, 21

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................. 5, 16

*Thacker v. Chesapeake Appalachia, LLC*,
    259 F.R.D. 262 (E.D. Ky. 2009)............................................................. 18

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ............................................................. 4, 7, 15, 21

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ............................................................. 6

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................. 7, 12

**Statutes**

28 U.S.C. § 1715............................................................. 3

**Rules**

Fed. R. Civ. P. 23............................................................. Passim

Fed. R. Civ. P. 23(a) ............................................................. 18, 19, 22

Fed. R. Civ. P. 23(a)(1) ............................................................. 19

Fed. R. Civ. P. 23(a)(2) ............................................................. 20, 21

Fed. R. Civ. P. 23(a)(3) ............................................................. 21

Fed. R. Civ. P. 23(a)(4) ............................................................. 21, 22

Fed. R. Civ. P. 23(b) ............................................................. 19, 22

Fed. R. Civ. P. 23(b)(3)............................................................. Passim

Fed. R. Civ. P. 23(c)(2)(B) ............................................................. 15

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 15

Fed. R. Civ. P. 23(c)(3) ...................................................................................................... 15

Fed. R. Civ. P. 23(e) .................................................................................................. 5, 7, 15

Fed. R. Civ. P. 23(e)(1) ................................................................................................ 14, 15

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 5, 6, 7, 8

Fed. R. Civ. P. 23(e)(3) ........................................................................................................ 6

Fed. R. Civ. P. 23(g) ........................................................................................................... 22

## STATEMENT OF ISSUES PRESENTED

1. Whether the proposed settlement between the Direct Purchaser Plaintiffs DALC Gear & Bearing Supply Corp., McGuire Bearing Company, Sherman Bearings, Inc., and Bearing Service, Inc. ("Plaintiffs"), on behalf of themselves and the proposed Direct Purchaser Distributor Settlement Class, and Defendants JTEKT Corporation, JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.), Koyo France SA, and Koyo Deutschland GmbH ("JTEKT"); (b) Nachi-Fujikoshi Corp., Nachi America Inc., Nachi Technology, Inc., and Nachi Europe GmbH ("Nachi"); (c) NSK Ltd., NSK Americas, Inc., NSK Europe Ltd., and NSK Corporation ("NSK"); (d) NTN Corporation, NTN USA Corporation, NTN Wälzlager (Europa) GmbH, and NTN-SNR Roulements SA ("NTN"); and (e) AB SKF, SKF GmbH, and SKF USA Inc. ("SKF") (collectively, the "Settling Defendants"), as set forth in the Settlement Agreement between Plaintiffs and the Settling Defendants, is sufficiently fair, reasonable and adequate for the Court to approve the settlement under Fed. R. Civ. P. 23;

2. Whether the Court should certify the Direct Purchaser Distributor Settlement Class (the "Settlement Class") for purposes of the settlement only; and

3. Whether the Court should approve the proposed plan for distribution of settlement funds.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.*,
    12-MD-02311, 2:12-cv-00103, ECF No. 497 (E.D. Mich. June 20, 2016)

*Date v. Sony Electronics, Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.*,
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
    *218 F.R.D. 508 (E.D. Mich. 2003)*

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
    *248 F.R.D. 483 (E.D. Mich. 2008)*

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
        497 F.3d 615 (6th Cir. 2007)

Fed. R. Civ. P. 23(c)(2)(B)

Fed. R. Civ. P. 23(e)(1), (e)(2)

**INTRODUCTION**

DALC Gear & Bearing Supply Corp., McGuire Bearing Company, Sherman Bearings, Inc., and Bearing Service, Inc. ("Plaintiffs"), on behalf of a Direct Purchaser Distributor Settlement Class ("Settlement Class") (defined below) composed of distributors who directly purchased Bearings[1] in the United States, have reached a settlement ("Settlement") with the JTEKT, Nachi, NSK, NTN, and SKF Defendants ("Settling Defendants"). Under the terms of the Settlement, the Settling Defendants will pay a total of $37,500,000 ("Bearings Settlement Fund").[2]

In addition to seeking the Court's approval of the Settlement, Plaintiffs request that the Court approve a *pro rata* plan to distribute the net settlement proceeds to members of the Settlement Class. For the reasons set forth herein, Plaintiffs respectfully submit that both the Settlement and the proposed distribution plan are fair, reasonable, and adequate, and should be approved by the Court.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Beginning in 2012, Plaintiffs filed class action lawsuits on behalf of direct purchasers of Bearings. Plaintiffs alleged that Defendants conspired to raise, fix, maintain, and/or stabilize prices, rig bids, and/or allocate the supply of Bearings sold in the United States, in violation of federal antitrust laws. Plaintiffs further alleged that because of the conspiracy, they and other direct purchasers of Bearings were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct. Plaintiffs sought recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

---

[1] The term "Bearings" refers to friction-reducing devices used in both automotive and industrial machinery that allow one moving part to glide past another moving part. Examples include, but are not limited to, the following products: ball bearings, tapered roller bearings, needle roller bearings, roller bearings, and mounted bearings of any size.

[2] If the proposed Settlement is finally approved, the Bearings litigation in this Court will be fully resolved.

1

After a significant amount of discovery had been taken, Plaintiffs filed a motion for class certification. On January 7, 2019, the Court denied Plaintiffs' class certification motion. Plaintiffs' Rule 23(f) motion for leave to appeal was also denied. Subsequently, the Court allowed Plaintiffs to file a renewed motion for certification of a class limited to Bearings distributors. Plaintiffs filed a class certification motion on behalf of a distributor class on August 1, 2019, along with reports from their economic and statistical experts. Defendants opposed the motion and filed motions to exclude the opinions of Plaintiffs' experts. After extensive expert discovery was conducted by the parties, Plaintiffs filed their class reply brief, reply reports from their experts, and responses to Defendants' *Daubert* motions. The Court scheduled a hearing on the class and *Daubert* motions for April 15, 2020, and Plaintiffs prepared for the hearing. The April 15 hearing was subsequently canceled, and the parties were awaiting a new date at the time they reached the Settlement.

In the summer of 2020 settlement discussions were rekindled. With the assistance of mediator James Quinn, the parties eventually agreed on the Settlement. A settlement agreement was signed by the parties in November 2020. The Settlement Class is composed only of Bearings distributors.

On February 23, 2021, the Court authorized the Plaintiffs to disseminate notice of the proposed Settlement, the fairness hearing, and related matters, to the Settlement Class (the "Notice Order"). (2:12-cv-00501, ECF No. 506). Thereafter, on March 11, 2021, 2,416 copies of the Notice (attached as Exhibit 1) were mailed, postage prepaid, to all potential members of the Settlement Class identified by Defendants. Further, on March 22, 2021, a summary notice was published in *Automotive News*. In addition, an Informational Press Release was issued nationwide via PR Newswire's "Auto Wire," which targets auto industry trade publications, and via PR Newswire's

"Machinery and Equipment" microlist.  Finally, a copy of the Notice was (and remains) posted online at www.autopartsantitrustlitigation.com/BearingsDistributor.

The deadline for submission of objections to the proposed Settlement, the proposed plan of distribution, the request for an award of attorneys' fees and litigation costs and expenses, and for requests for exclusion from the Settlement Class, is May 5, 2021. To date, there have been no objections, or any requests for exclusion. After the applicable deadlines have passed and prior to the fairness hearing, Settlement Class Counsel will file a report on any objections or requests for exclusion.[3]

## II.   TERMS OF THE SETTLEMENT AGREEMENT

Plaintiffs, on behalf of the Settlement Class, executed the settlement agreement on November 23, 2020 ("Settlement Agreement"), under which the Settling Defendants agreed to pay Plaintiffs and the Settlement Class $37,500,000.

In exchange for the settlement payment, the proposed Settlement provides, *inter alia,* for the release by Plaintiffs, and the other members of the proposed Settlement Class, of certain claims ("Released Claims") concerning sales of Bearings to distributor customers who purchased those products in the United States against the Settling Defendants and other "Releasees" (as defined in the Settlement Agreement). The Released Claims specifically exclude certain claims against the Settling Defendants, including claims based upon indirect purchases of Bearings; claims based on negligence, personal injury, or product defects; claims brought under laws other than those of the

---

[3] Counsel for the JTEKT, Nachi, NSK, NTN, and SKF Defendants have informed Settlement Class Counsel that their clients fulfilled their obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005" or "CAFA"), by disseminating the requisite notice to the appropriate federal and state officials at least ninety days prior to the final approval hearing.

United States relating to purchases of Bearings outside the United States; and claims concerning any product other than Bearings. Settlement Agreement at ¶ 22.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

At various times throughout the nine years this litigation has been pending, the parties engaged in settlement discussions; sometimes directly, and at other times with the assistance of mediators. Thus, this Settlement was reached after full discovery (both merits and expert) and years of negotiations with Settling Defendants' counsel. The Settlement Agreement was executed only after arm's-length and good-faith negotiations between experienced and sophisticated counsel. During the negotiations, the merits of the respective parties' positions were discussed and evaluated. The parties communicated extensively, and Settlement Class Counsel analyzed information obtained through their extensive discovery efforts, as well as information provided to them by Settling Defendants, relevant industry data, and other pertinent information. Ultimately, after the Plaintiffs continued to press the litigation by filing a second class certification motion and with the assistance of an experienced mediator, the parties were able to reach agreement. The Settlement is the result of these good-faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of the claims and defenses and their clients' respective positions. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate and merits final approval.

### A.    The Governing Standards.

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-

length settlement. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). Due to the uncertainties and risks inherent in any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010) (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

**B.** **The Proposed Settlement is Fair, Reasonable, and Adequate.**

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). The 2018 amendments to Rule 23(e) lists factors for a court to consider before approving a proposed settlement. The factors are whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual for Complex Litigation (3d ed.)* § 30.42). This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., In re Automotive Parts Antitrust Litig.*, 12-MD-02311, 2:12-cv-00103, ECF No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013)). *Accord Sims v. Pfizer, Inc.*, No. 1:10-cv-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016). A court's inquiry on final approval is whether the proposed settlement is "fair,

adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at \*14-15 (E.D. Mich. Oct. 18, 2010).

Historically, courts in the Sixth Circuit considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement should be approved. *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at \*5 (E.D. Mich. Nov. 28, 2016) (considering (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest). *Accord UAW*, 497 F.3d at 631; *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at \*3 (E.D. Mich. Dec. 12, 2013); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-MD-2196, 2015 WL 1639269, at \*3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015). The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 Advisory Committee Note (2018 Amendment).

As discussed more fully below, the proposed Settlement is fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

> **1.** **The Class Representatives and Class Counsel Have Adequately Represented the Class, and the Settlement Was Reached at Arm's Length.**

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee Note. Relevant considerations may include the experience and expertise of plaintiff's counsel, the quantum of information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorney's fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

The Plaintiffs and Settlement Class Counsel have adequately represented the proposed Settlement Class in connection with the proposed Settlement and the litigation in general. The Plaintiffs' interests are the same as those of the Settlement Class members, and Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They negotiated the Settlement at arm's length with well-respected and experienced counsel for Settling Defendants, and with the assistance of two Court-appointed mediators. There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford*, 2006 WL 1984363, at *26; *Sheick v. Automotive Component Carrier*

*LLC*, No. 09-14429, 2010 WL 3070130, at *19-20 (E.D. Mich. Aug. 2, 2010). Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-cv-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

The negotiations that led to the Settlement were at all times conducted at arm's length, took many years to complete, and were assisted by two Court-appointed mediators. Further, in addition to the information obtained by Settlement Class Counsel in connection with their investigation of the Bearings industry and alleged conspiracy, there has been an enormous amount of fact and expert discovery in this action, including, among other things, several attorney proffers, the review of millions of pages of documents, and the taking of scores of depositions. This information, and Settlement Class Counsel's legal analysis, allowed Settlement Class Counsel to evaluate the strengths and weaknesses of Plaintiffs' claims. Settlement Class Counsel have concluded that the proposed Settlement is fair, reasonable, and in the best interests of the Settlement Class, and their informed opinion supports both final approval of the settlement and the plan of distribution.[4]

---

[4] There was no negotiation of attorneys' fees. A separate motion for an award of attorneys' fees and reimbursement of litigation expenses is being filed today with the Court.

Because the proposed Settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law who advocate its approval, consideration of these factors fully supports final approval of the Settlement.

### 2. The Relief Provided to the Class is Significant.

The relief provided to the Settlement Class consists of a $37,500,000 cash payment by the Settling Defendants. Settlement Class Counsel believe that this substantial payment represents an excellent result for the Settlement Class.

### a. The Costs, Risks, and Delay of Trial and Appeal.

When considering the adequacy of the relief to the class in determining the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp.*, No. 2:09-cv-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015). These risks must be weighed against the settlement consideration; here the certainty of a $37.5 million payment by the Settling Defendants.

Settlement Class Counsel believe the Settlement is an excellent result. This was not a case where the class was able to ride the government's coattails. Instead, Plaintiffs' counsel had to develop nearly the entire case on their own. Plaintiffs' case included industrial and aftermarket bearings, not just automotive, and therefore was much larger in scope and complexity than the government's bearings case; NSK and JTEKT only pled guilty to antitrust violations in connection with sales of automotive bearings to Toyota, certain of its subsidiaries, and other unnamed Japanese automobile and component part manufacturers. In addition to NSK and JTEKT,

Plaintiffs' case also included Schaeffler, Nachi, NTN, and SKF, none of which was charged in the United States (although one of them was a U.S. leniency applicant). Further, unlike the government, Plaintiffs were required to prove damages, and antitrust impact on all or virtually all class members. The aftermarket bearings case on behalf of the distributors pursued by Plaintiffs was different and more complex than the Department of Justice's case and required ground-up development of both the liability and damages case by Settlement Class Counsel.

Weighing the Settlement's benefits against the risks and costs of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9. Plaintiffs were optimistic about the likelihood of ultimate success in this case, but success is not certain. As the Court has previously noted, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice, and as noted above, the bearings guilty pleas were only by two Defendants and related to automotive bearings sales to Toyota and its suppliers. The presence of a guilty plea does not guarantee victory; other factors come into play. For example, the DOJ is not required to prove class-wide impact or damages, both of which require complex and expensive expert analyses, and the outcome of litigating those issues is uncertain. *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 11.

The Settling Defendants are each represented by highly experienced and competent counsel. They denied Plaintiffs' allegations of liability and damages, vigorously opposed Plaintiffs' motion for class certification, and asserted numerous defenses. Plaintiffs believe the Settling Defendants were prepared to defend this case through trial and appeal. Risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while optimistic about the outcome of this litigation, Plaintiffs must acknowledge the risk that some or all Settling

Defendants could prevail with respect to certain legal or factual issues, which could reduce or eliminate any potential recovery.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics*, 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

As the proposed Settlement with the Settling Defendants has not yet been finally approved, it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation as Defendants could seek to use any such disclosures against Plaintiffs going forward. Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the Settlement at least partially negates.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They litigated this case for nine years and negotiated the Settlement at arm's length with well-respected and experienced counsel for the Settling Defendants. Settlement Class Counsel believe that the proposed Settlement eliminates the risks, expense, and delay with respect to a recovery from the Settling Defendants and ensures a substantial payment to the Settlement Class. This factor also supports final approval of the proposed Settlement.

> **b.   The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, if Required.**

This case does not present any difficulties in identifying claimants or distributing settlement proceeds. Consistent with the practice in previously approved *Automotive Parts Antitrust Litigation* direct purchaser settlements, Settlement Class Counsel propose that the net settlement funds be distributed *pro rata* to approved claimants. *See* Section V., *infra*. Claims will be processed using a settlement claims administrator to review claim forms, assist Settlement Class Counsel in making recommendations to the Court concerning the disposition of those claims, and to mail checks to approved claimants for their *pro-rata* shares of the net settlement funds.

> **c.   The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment.**

The Settlement Agreement provides that attorneys' fees shall be paid solely out of the settlement funds subject to court approval, and that final approval of the Settlement is not contingent on the outcome of any petition for attorneys' fees. Settlement Class Counsel are seeking attorneys' fees not to exceed 33.33% of the Bearings Settlement Fund, consistent with previous fee petitions and awards approved by the Court in the *Automotive Parts Antitrust Litigation* and Courts in the Sixth Circuit generally. This factor supports final approval.

**d. There Are No Separate Agreements Relating to the Proposed Settlement.**

The Settlement Agreement reflects all the agreements and understandings relating to the proposed Settlement.

**3.    The Settlement Treats Class Members Equitably Relative to Each Other.**

Class members will be treated equitably relative to each other in terms of their eligibility for a *pro-rata* portion of the settlement funds and their right to opt-out of the Settlement Class. Likewise, each class member gives the same releases. Plaintiffs submit that this factor supports final approval.

**4.    The Settlement is Consistent with the Public Interest.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205 (6th Cir. 1992). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed Settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval.

Consideration of the above factors supports final approval of the proposed Settlement. Therefore, Settlement Class Counsel respectfully submit that the proposed Settlement is in the best interests of the Settlement Class and should be finally approved.

**IV.    NOTICE WAS PROPER UNDER RULE 23 AND DUE PROCESS**

Federal Rule of Civil Procedure 23 provides that, "upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) [ ] the

court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The notice program and forms of notice utilized by Plaintiffs satisfy these requirements. The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also informs members of the Settlement Class that Settlement Class Counsel will propose a plan of distribution of the Bearing Settlement Fund and seek an award of reasonable attorneys' fees and litigation expenses.

The content and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process. Pursuant to the Notice Order, on March 11, 2021, 2,416 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants as their distributor customers of Bearings. The Summary Notice was published in *Automotive News* on March 22, 2021, and an Informational Press Release targeting

15

automotive industry trade publications was issued nationwide via PR Newswire's "Auto Wire," which targets auto industry trade publications, and via PR Newswire's "Machinery and Equipment" microlist "Auto Wire." Finally, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com/BearingsDistributor.

## V. THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUNDS IS FAIR, REASONABLE, AND ADEQUATE AND MERITS APPROVAL

Approval of a settlement fund distribution in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan of distribution must be fair, reasonable, and adequate. *Packaged Ice*, 2011 WL 6209188, at *15. *Accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 107 (E.D. Pa. 2013); *Law v. National Collegiate Athletic Ass'n*., 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000). A plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at *2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 12.35, at 350 (4th ed. 2002) ("*Newberg*") (noting that *pro-rata* allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions").

An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. As with other aspects of a settlement, the opinion of experienced and informed counsel is entitled to considerable weight. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

The Notice sent to potential Settlement Class members describes the plan recommended by Settlement Class Counsel for the distribution of settlement funds to Class members who file valid claim forms. The proposed distribution plan provides for the Bearings Settlement Fund, with accrued interest, to be allocated among approved claimants according to the amount of their recognized transactions during the Class Period, after payment of attorneys' fees, litigation and administration costs and expenses.

This Court has approved similar *pro rata* distribution plans in the *Automotive Parts Antitrust Litigation*, as have numerous other courts in other matters. *See, e.g., In re Automotive Hoses Cases*, 2:15-cv-03201, ECF No. 10); 2:12-cv-00601, ECF No. 172; 2:12-cv-00101, ECF No. 572). *See also* 4 *Newberg*, § 12.35, at 353-54 (noting propriety of *pro rata* distribution of settlement funds). "Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable." *In re Vitamins Antitrust Litig*., No. 99-197, 2000 WL 1737867, at *6 (D. D.C. Mar. 31, 2000) (finding proposed plan for *pro rata* distribution of partial settlement funds was fair, adequate, and reasonable). *Accord Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *3 (E.D. Mich. Jan. 20, 2015) (approving a plan as fair, reasonable, and adequate that utilized a *pro rata* method for calculating each class member's share of the settlement fund). The proposed plan for allocation and distribution satisfies the above criteria and should receive final approval.

17

## VI.    CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE

In preliminarily approving the proposed Settlement, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed settlement only, the following Settlement Class:

> All distributors that purchased bearings in the United States directly from one or more Defendant in the Bearings Actions (or their subsidiaries or affiliates) from and including January 1, 2000 through December 31, 2014 (the "Settlement Class Period"). Excluded from the class are the Defendants in the Bearings Actions and their present and former parents, subsidiaries, affiliates, and joint ventures.

2:12-cv-00501, ECF No. 506. For purposes of the proposed Settlement Class definition, the following entities are Defendants: JTEKT Corporation; JTEKT North America Corporation (formerly Koyo Corporation of U.S.A.); Koyo France SA; Koyo Deutschland GmbH; Nachi-Fujikoshi Corp.; Nachi America Inc.; Nachi Technology, Inc.; Nachi Europe GmbH; NSK Ltd.; NSK Americas, Inc.; NSK Europe Ltd.; NSK Corporation; NTN Corporation; NTN USA Corporation; NTN Wälzlager (Europa) GmbH; NTN-SNR Roulements SA; Schaeffler Group USA Inc.; Schaeffler Technologies; AG & Co. KG (formerly Schaeffler Technologies GmbH & Co. KG); FAG Kugelfischer GmbH; AB SKF; SKF GmbH; and SKF USA Inc. *Id.*

It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 24; *Cardizem*, 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009). As demonstrated below, the proposed Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

**A.      The Proposed Direct Purchaser Distributor Settlement Class Satisfies Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Ford*, 2006 WL 1984363, at \*19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at \*5; *Date*, 2013 WL 3945981, at \*3.

**1.      The Settlement Class is Sufficiently Numerous.**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to 2,416 entities, geographically dispersed throughout the United States, that were identified by Settling Defendants as their potential distributor customers who directly purchased Bearings from Defendants. Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.    There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 2015 WL 136238, at *13 (E.D. Mich. Jan 9, 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 *Newberg on Class Actions*, § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an illegal agreement to fix prices of Bearings is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on members of the Settlement Class. *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members." *Flat*

*Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.  Plaintiffs' Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other Settlement Class members: Defendants' alleged violations of the antitrust laws. Plaintiffs and the other members of the Settlement Class are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Act. *See UAW*, 497 F.3d at 625; *Barry v. Corrigan*, No. 13-cv-13185, 2015 WL 136238, at *13 (E.D. Mich. Jan. 9, 2015). Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining whether the representation of the class will be adequate: 1) the representative must have common interests with unnamed members of the class; and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC*, No. 09–14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed representatives of the Settlement Class—DALC Gear & Bearing Supply Corp., McGuire Bearing Company, Sherman Bearings, Inc., and Bearing Service, Inc.—are common to those of other Settlement Class members. Plaintiffs are distributors who directly purchased Bearings from a Defendant in the United States. Plaintiffs and the other Settlement Class members claim that they were injured because of the alleged conspiracy and seek to prove that Defendants violated the antitrust laws. Plaintiffs' interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[5] Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Class in the settlement negotiations with the Settling Defendants and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

### B.   Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), Plaintiffs must show that the proposed class action falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the

---

[5] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* direct purchaser cases. They submit that, for the same reasons that the Court appointed them to those positions, their appointment as Co-Lead Settlement Class Counsel is appropriate. Cera LLP and Cohen Milstein Sellers & Toll are law firms that have worked cooperatively and extensively with Interim Co-Lead Counsel on this case. Both firms have extensive experience handling class action antitrust cases and other complex litigation and are well-equipped to serve as additional Settlement Class Counsel.

controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Company* 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1.    Common Legal and Factual Questions Predominate.

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive" to warrant certification. *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that alleged horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 27; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal*, the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation … will not vary among class members'…. Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the Settlement Class. As discussed above, whether Defendants entered into an alleged illegal agreement to artificially fix prices of Bearings is a question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust

laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Plaintiffs and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove the same alleged wrongdoing by Defendants to establish liability. Therefore, common proof of Defendants' alleged violations of antitrust law will predominate.

## 2. A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Bearings litigation is centralized in this Court. If a Settlement Class member wants to control its own litigation, it can request exclusion from the Settlement Class. Thus, consideration of factors (1) – (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem*, 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial. *See Cardizem*, 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D.

Wisc. 2000)). Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class. *E.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury."). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

## VII.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, certify the Settlement Class for purposes of settlement only, and approve the proposed plan for allocation and distribution of the Bearings Settlement Fund.

DATED: April 16, 2021                          Respectfully submitted,

   /s/David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiff*s

Solomon B. Cera
Thomas C. Bright
CERA LLP
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230

Manuel J. Dominguez
COHEN MILSTEIN SELLERS & TOLL, PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400

*Additional Counsel for Direct Purchaser Plaintiffs*

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 16, 2021, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system which will send notification of such filing to all counsel

of record registered for electronic filing.

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkbressack.com